(March 4, 1927.)

GEORGE MEIER, Plaintiff, v. CITY COUNCIL OF BOISE CITY, Defendant.

[254 Pac. 221.]

STATUTES—SPECIAL ELECTION—ELECTION TO RESUME SPECIAL CHARTER—CALL FOR ELECTION—CITY COUNCIL ESTOPPED.

1. C. S., sec. 4297, part of the chapter on commission form of government, providing that any city after operating six years under the provisions of the chapter may abandon such organization thereunder, and accept the provisions of the then general laws, or, if now organized under special charter, may resume said special charter, on a vote in favor thereof at a specially called election, *held* by its provision for resumption of special charter by a city incorporated under special charter before adopting the commission form of government not to authorize the granting of

a new and special charter to such a city, and so to violate Const., art. 12, sec. 1, requiring provision to be made by general law for incorporation and organization of cities; there never having been any unconditional departure from the original incorporation, and no new incorporation on the city resuming its special charter.

2. C. S., sec. 4297, providing for election for city, under commission form of government resuming special charter being ordered and conducted as provided by the provisions of the chapter so far as applicable, *held* to authorize the mayor to call the election and fix the date, in view of section 4173, providing for election for adoption of commission form of government directing the mayor to issue the call.

3. City council by adopting mayor's call for election for city under commission form of government resuming special charter, and appointing officers to effectuate it, made it their own, adopting and acquiescing in every recitation in it, including one that there was proper petition for the election, estopping them after election to assert that sufficiency of petition had not been determined.

4. C. S., sec. 664, providing that no special election shall be held within 90 days before a general election, being part of title 4 of the subject of "Elections," section 488 of which exempts from its provisions school district elections "and such other elections as are in these Codes elsewhere specially provided for," has no application to a special election, under section 4297, for a city under commission form of government resuming its special charter.

Original application for writ of *mandamus*. *Writ directed to issue as prayed for.*

Fraser & Carter, J. L. Eberle and O. W. Worthwine, for Plaintiff.

An election of this character is a general and not a special election. (*Kessler v. Fritchman,* 21 Ida. 45, 119 Pac. 692.)

The expressed wish of the people must not be overthrown except for the most cogent reasons involving an irregularity in calling or conducting the election for which the

Publisher's Note.

See Municipal Corporations, 28 Cyc., p. 236, n. 61 New. Statutes, 36 Cyc., p. 1001, n, 24,

law requires the election to be held void, or one which could reasonably affect the result of the election. (*Weisgerber v. Nez Perce County*, 33 Ida. 670, 675, 197 Pac. 562.)

The constitutionality of the Black Law has been passed upon and sustained in the cases of *Swain v. Fritchman*, 21 Ida. 783, 125 Pac. 319; *Kessler v. Fritchman*, 21 Ida. 30, 119 Pac. 692.

J. J. McCue, J. M. Lampert and C. S. Hunter, for Defendant.

Fixing the time and place for the holding of an election is a legislative act and by a municipal corporation can only be done by ordinance. (2 McQuillin, Munic. Corp., p. 1402.)

Determining sufficiency of the petition is a condition precedent. (*Marsden v. Harlocker*, 48 Or. 90, 120 Am. St. 786, 85 Pac. 328; 9 R. C. L., sec. 18, p. 996.)

"In determining whether an election is special or general, regard must be had to subject matter as well as date of election, and if an election occurs throughout state uniformly by direct operation of law, it is a general election, but if it depends upon employment of a special preliminary proceeding peculiar to process which may or may not occur and the election is applicable only to a restricted area less than the whole state, it is a special election." (*Norton v. Coos County*, 113 Or. 618, 233 Pac. 864.)

Harry S. Kessler and B. F. Neal, *Amici Curiae.*

The old special charter granted to Boise by the territorial legislature of 1866 was impliedly repealed and abrogated by the constitution and general laws of the state, upon the acceptance of the general law by Boise and the incorporation of the city thereunder at the general election held in May, 1912. (C. S., sec. 4178; *Standard Salt & Cement Co. v. National Surety Co.*, 134 Minn. 121, 158 N. W. 802; *Woodbridge v. City of Duluth*, 121 Minn. 99, 140 N. W. 182;

*Schultz v. Phoenix,* 18 Ariz. 35, 156 Pac. 75; *Pryzbylowski v. Board of Poor Commrs.,* 188 Mich. 270, 154 N. W. 117; 28 Cyc. 244, and cases in note 3; 1 Abbott's Mun. Corp., p. 62; 1 Lewis Sutherland's Stat. Const., p. 538, sec. 279; Idaho Const., art. 12, sec. 1, and art. 3, sec. 19.)

Since the adoption of the Black Law, or for nearly fifteen years, the old special charter formerly granted to Boise has been a dead instrument. The legislature is without power to resurrect, re-enact or in any way give effect or put in operation a special charter which has passed out of existence or been repealed. (Const., art. 3, sec. 19; art. 12, sec. 1.)

The legislature could not make provision for the re-enactment of a law no longer in existence, in the method provided by sec. 4297, as it applies to special chartered cities. (Const., art. 3, secs. 1, 14, 15, 16 and 18.)

Richards & Haga and Hawley & Hawley, *Amici Curiae.*

"It is not our business as a court to deal in subtle refinements in construing legislative acts, but it is rather our duty to ascertain, if possible, from a reading of the whole act the purpose and intent of the legislature and give force and effect thereto." (*Swain v. Fritchman,* 21 Ida. 783, 125 Pac. 319.)

The special and general municipal elections referred to in C. S., chap. 173, have no connection with the general and special elections referred to in chap. 25, and, the word "special" in chap. 173 is purely surplusage and the words "general municipal election" cannot come within the definition of the general election as defined by chap. 25. (*Kessler v. Fritchman,* 21 Ida. 30, 119 Pac. 692.)

Const., art. 12, sec. 1, provides that cities and towns heretofore incorporated may become organized under the general laws whenever a majority of the electors at a general election shall so determine under such provisions as may be made by the legislature. The word "provisions" is synonymous with the words "terms and conditions."

(*Snyder v. Dwelling House Ins. Co.*, 59 N. J. L. 544, 59 Am. St. 625, 37 Atl. 1022.)

One of the terms and conditions provided for by the legislature was that cities having a special charter could operate for a limited period under the Black Law and then if not satisfactory could resume operation under their charters.

T. BAILEY LEE, J.—Boise City was incorporated under special charter by the territorial legislature of 1866. Its charter rights were later recognized and confirmed by the state constitution. Evidently desirous of attaining uniformity in city government, the framers of the constitution by art. 12, sec. 1 thereof, provided:

"The legislature shall provide by general laws for the incorporation, organization and classification of the cities and towns, in proportion to the population, which laws may be altered, amended, or repealed by the general laws. Cities and towns heretofore incorporated, may become organized under such general laws, whenever a majority of the electors at a general election shall so determine, under such provisions therefor as may be made by the legislature."

Pursuant to such authorization, the legislature of 1911 adopted what is commonly known as the Black Law, providing a commission form of government for cities having a population of 2,500 or more, which enactment now appears as C. S., chap 173. C. S., sec. 4297, being a section of that law, provides:

"Any city which shall have operated for more than six years, under the provisions of this chapter, may abandon such organization hereunder, and accept the provisions of the general law of the state then applicable to cities of its population, or if now organized under special charter, may resume said special charter as follows:

"Upon the petition of not less than 25 per centum of the electors of such city a special election shall be called at which the following propositions only shall be submitted:

"Shall the city of (name of city) abandon its organization under the act of the eleventh session of the legislature of Idaho and become a city under the general law governing cities of like population, or if now organized under special charter, shall it resume said special charter?

"If a majority of the votes cast at such special election be in favor of such proposition, the officers elected at the next succeeding biennial election shall be those then prescribed by the general law of the state for cities of like population, or prescribed by special charter if such city had been incorporated under special charter at the time of adopting the provisions of this chapter; and upon qualification of such officers, such city shall again become organized under such general law of the state, or special charter, as the case may be; but such change shall not in any manner or degree affect the property, rights or liabilities of such city, but shall merely extend to such change in its form of government.

"The sufficiency of such petition shall be determined, the election ordered and conducted, and the results declared generally as provided by the provisions of this chapter, in so far as the provisions thereof are applicable."

In 1912 the city adopted the commission form of government, and has since operated thereunder. On December 30, 1926, there were filed with the city clerk certain petitions requesting the calling of an election under this section to determine the wish of the people to abandon the present form of government and resume operations under the special charter. On January 4, 1927, the mayor set February 3d following as the date of such election, and on January 5th issued his proclamation calling such election. On January 11th he signed the notice of such election and caused the same to be published. At a meeting of the city council on that day, it was "Moved by Councilman Smith to adopt and approve the notice of the Mayor calling for a special election on February 3rd, and that the city clerk and deputies act as registrars for all precincts for said election," which mo-

tion was duly carried.   The proclamation "calling" the election recited among other things:

"  . . . . and whereupon after due·investigation said petition has been found to be proper in form and to contain the names of 3,087 *bona fide* electors, which is more than 25 per centum of the electors of Boise City and of the 11,319 electors of the Boise City precincts as shown on the 1926 registration lists of Ada County; and

"Whereas: The sufficiency of the petition having been thus clearly established, etc."

The election was duly had with the unofficially reported result of 1,682 votes for and 1,508 against abandonment and resumption.   Claiming that the election was invalid, the council refused to canvass and certify the returns.   The plaintiff, George Meier, a qualified elector, taxpayer and resident of the city, has applied for a ·writ of *mandamus* directing the council to canvass the returns, certify the same and make in writing a public declaration of the result.   The council in its return admits its refusal to canvass the returns, but pleads that sec. 4297, *supra,* conflicts with art. 12, sec. 1, and art. 3, sec. 19 of the state constitution; that the sufficiency of the petition was never determined by the council; that the proclamation of election and notice thereof were made and published by the mayor without authority of the council; that such election was held within 90 days of the general city election to be held on April 5, 1927, and therefore was void under C. S., sec. 664, which expressly prohibits the holding of special elections within 90 days of a general election.

[1]   For the reasons given, the council declares the entire proceedings void, and asks to be relieved from the canvass as necessarily a useless and vain thing.   The unconstitutionality of said sec. 4297 is based upon the contention that in contravention of the constitution, *supra,* it permits the "organization and incorporation of such cities as have formerly had special charters under special and local laws, and is not therefore a general law"; that it classifies according to a

former form of government and authorizes the granting of a new, special and local charter to Boise City after the adoption of the constitution. There might be something in one or all of these arguments, if their premises were not so obviously fallacious. To sustain them there must be some new incorporation, some new entity established in place of one dissolved. Boise City became a corporate entity in 1866. It has never ceased to be such. Begotten a child of the legislature, its legitimacy recognized by the constitution, it exchanged its old-fashioned habiliments at the behest and promise of its parent that it might resume them after a six-year experiment with the latest styles. Had there been an unconditional departure from the original incorporation to the organization under the commission form of government, it might well be held that such a departure, *ipso facto,* worked an abandonment or abrogation of the former charter. But abandonment and abrogation are matters of intent; and until that intent is definitely fixed, there can be neither one nor the other. The adoption of the commission form of government was expressly and consciously undertaken subject to the assured right after a limited time to renew activities under the original charter. It is not to be contemplated that the legislature played the role of the spider to the fly, or that the citizens of Boise City entered the inviting parlor willy-nilly. They voted to try the new form in 1912, well knowing that this court had the year before in *Kessler v. Fritchman,* 21 Ida. 30, 45, 119 Pac. 692, held that such a vote merely "suspended" the original charter. Knowing that for them a *locus penitentiae* had been established, they set out in what they hoped to be a more excellent way, but like so many routes of ancient days, "It repented them"; and they want to be showed the way home. The course of return is entirely constitutional.

[2] Could the mayor, without an ordinance or direction of the council, fix the date for and call an election? Sec. 4297 is silent as to who shall issue the call. Certain other elections are provided for in the chapter. Sec. 4173, provid-

ing the election for adopting the commission form of government, directs the mayor to issue the call; sec. 4240 directs the council to call elections on initiative and referendum; and under secs. 4258 and 4259 the council must call elections for recall. It would appear that had the legislature purposed that the election in question should be called by the mayor or council to the exclusion of either, it would have so declared. Why, after specifically vesting the power at one time in the mayor and at other times in the council, should it have failed to specify in the one instance? The answer evidently lies in sec. 4297 itself, which directs that the election be "ordered and conducted, and the results declared generally as provided by the provisions of this chapter, in so far as the provisions thereof are applicable."

Under sec. 4173, as before said, the mayor called the election changing from charter to commission form. Could anything be more applicable than that he should call the election to change from commission form to charter? Is it inapplicable for the creature to don its coat by the same means it doffed it? Why distort plain English? We think the mayor had full power to call the election and fix the date. Publishing notice after call was merely ministerial.

[3] But there are other reasons for upholding the call. By the motion of January 11th, the council adopted the mayor's call for the February 3d election, and appointed registrars therefor. This had no elements of a ratification of the mayor's act, even if unauthorized. The voting members made it in terms their own order dating as of the day of their adoption; and, further, they are now estopped to question their own action especially when they appointed officers to effectuate such order. When they adopted such order, they acquiesced in and adopted every recitation in it. By their answer they admit the petitions bore 3,087 true and correct signatures. It appears they had before them a list of voters registered in the city on December 30, 1926, totaling 18,129. They also had the county registration showing 11,319 registered voters within the limits of the city in

November, 1926. No name has been stricken from the city record since 1921, no check has been made for duplications or for any who may have died or left the city in the meantime. The county record upon its face presumptively speaks the truth and there is no attempt to impeach it. The fact controlling here is not whether the council did or did not find the petitions sufficient. It is whether or not the petitions were sufficient. Measured by the county record, they were amply sufficient. There is no charge that the petitions were not sufficient; no charge anywhere that by reason of these other alleged defects the public was misled or deprived of any right. No fraud is charged, no different result is forecast. Every voter had lawful notice of the time and place and purpose of the election. No review was sought, no injunction prayed. On the contrary, the majority of the council fully conversant with the conditions not only sat by, letting the wheels go round, but on January 11th gave them substantial impetus by appointing registrars. Under such a showing, the court will not set aside the will of the people expressed at the polls.

[4] It is finally contended that the election was a special election and could not in violation of C. S., title 4, sec. 664, be held within 90 days of the April general election. Irrespective of whether or not the election was in fact a special or general election, this section is a part of a general enactment, the first section of which, now sec. 488, C. S., expressly exempts from its provisions school district elections "and such other elections as are in these codes elsewhere specially provided for." The statute in question has no application to the election provided for by sec. 4297 (*Shoshone Highway Dist. v. Anderson,* 22 Ida. 125, 125 Pac. 219.)

The writ will issue as prayed for. Costs to plaintiff.

Wm. E. Lee, C. J., and Budge, Givens and Taylor, JJ., concur.