[File No. 6264.]

STATE OF NORTH DAKOTA, EX REL. W. H. ALEXANDER, Appellant, v. CHARLES J. EVANSON, Respondent.

(255 N. W. 98.)

Opinion filed May 23, 1934.

*J. B. Wineman, P. J. McClernan* and *George D. Smith,* for appellant.

*H. G. Owen,* for respondent.

CHRISTIANSON, J.   This is a mandamus proceeding to compel the auditor of the city of Grand Forks to certify as sufficient a petition filed with the city auditor asking that a special election be called to vote upon the question whether the city government shall be changed from the commission form to the aldermanic form.

The question presented for determination is whether the petition filed with the city auditor is signed by a sufficient number of the electors of the city.

In 1907 the legislative assembly provided for the commission form

of government in North Dakota. Laws 1907, chap. 45. In 1911 the legislative assembly enacted legislation making the initiative, referendum and recall applicable to cities operating under the commission form of government, and, also, providing procedure by which a city which had adopted the commission plan might return to the aldermanic system of government. Laws 1911, chap. 67. In 1913 the legislative assembly enacted another statute covering the same matters that were covered by the legislative enactment of 1911, although no reference was made therein to the former legislation. Laws 1913, chap. 79.

So far as concerns the questions under consideration here there were no essential difference between the two enactments. The parts of the 1913 enactment material here read as follows:

"An Act to Provide for a Means of Removal of Elective Officers by the Will of the People and for the Political Reserve Powers of Electors to be Used Through the Initiative and Referendum in City Matters, and the Form of Petitions Applicable to Cities Which Have Adopted or May Hereafter Adopt the Commission System of Government; also to Prescribe the Manner by Which a City, Having Adopted the Commission System of Government, May Return to the Former System.

"Be It Enacted by the Legislative Assembly of the State of North Dakota:

"Sec. 1. Recall. The holder of any elective office in cities which may adopt or have adopted the commission plan of government under any of the laws of this state applicable thereto may be removed at any time by the electors qualified to vote for a successor of such incumbent. The procedure to effect the removal of an incumbent of an elective office shall be as follows: A petition signed by electors entitled to vote for a successor to the incumbent sought to be removed, equal in number to at least thirty per centum of the entire vote for all candidates for the office of president of the city commission cast at the last preceding general municipal election, demanding an election of a successor of the person sought to be removed, shall be filed with the city auditor, which petition shall contain a general statement of the grounds for which the removal is sought. . . .

"Sec. 5. Return to Former System. Any city which shall have operated for more than six years under the provisions of this Act may abandon such organization hereunder, and accept the provisions of the

general law of the state then applicable to cities of its population, or if now organized under special charter, may resume said special charter by proceeding as follows:

"Upon petition of not less than forty per centum of the electors of such city a special election shall be called at which the following propositions only shall be submitted: 'Shall the city (name of city) abandon its organization under the commission system and become a city under the general law governing cities of like population?' If a majority of the votes cast at such special election be in favor of such proposition, the officers elected at the next biennial election shall be those then prescribed by the general law of the state for cities of like population and upon the qualification of such officers such city shall become a city under such general law of the state; but such change shall not in any manner or degree affect the property, rights or liabilities of any nature of such city, but shall merely extend to such change in its form of government.

"The sufficiency of such petition shall be determined, the election ordered and conducted, and the result declared generally as provided by Section one of this Act in so far as the provisions thereof are applicable." Laws 1913, Chapter 79.

Section 5, supra, was embodied in § 3839, Comp. Laws 1913 and has remained in force since its enactment without change.

It is the contention of the relator that a petition signed by more than forty per cent of the votes cast for president of the city commission at the last preceding general municipal election is a sufficient petition. This contention is predicated upon the last sentence in § 5, supra, which reads:

"The sufficiency of such petition shall be determined, the election ordered and conducted, and the result declared generally as provided by Section one of this Act in so far as the provisions thereof are applicable."

It is argued that inasmuch as § 1 of the act provides that the per centum of electors required to sign a petition (for the recall of an officer) shall be predicated upon "the entire vote for all candidates for the office of president of the city commission cast at the last preceding general municipal election," that it follows (because of the above quoted provision in § 5, supra) that the per cent of voters required to sign a

petition for the abandonment of the commission form of government must be predicated upon the same basis.

In our opinion this contention is untenable and contrary to the plain language of the statute.

The provisions relating to the initiative and referendum of city ordinances and the recall of city officers and the provision relating to an election to vote upon the question of abandoning the commission form of government were considered by the members of the legislative assembly at the same time and were made parts of the same law, and notwithstanding the fact that the lawmakers provided that the per cent of voters who must sign a petition for the initiative or referendum of an ordinance or the recall of an officer shall be based upon the entire vote cast for all candidates for president of the city commission at the last preceding general municipal election, they adopted a wholly different basis on which to predicate the percentage of electors who must sign a petition for an election to abandon the commission form of government. They specifically provided that such petition must be signed by "not less than forty per centum of the electors of such city." Here there is no reference to the votes cast at a former election. The basis on which the percentage of petitioners is predicated is not the vote cast at a preceding election but the number of electors in the city at the time the petition is presented. It will be noted that the lawmakers provided that as a prerequisite to the right to petition for such election the city must have operated under the commission plan of government for at least six years. The lawmakers deemed it wise to provide that where the commission plan was adopted it must have a fair trial; and they also deemed it wise to provide that before an election may be held to vote upon the question whether the plan shall or shall not be abandoned there must be an expression of a desire for such election by at least forty per cent of the then electors of the city expressed by means of their signatures attached to a petition.

It is true that ordinarily statutes relating to petitions for an election prescribe a certain percentage of votes cast at some preceding election as the basis on which the number of signers is to be determined; but this is not the only basis on which the number of signers may be predicated. It is for the legislature to determine what number of signers shall be required and the basis for determining such number.

And where, as here, the statute requires the petition to be signed by a certain number of the then electors of a city it is incumbent upon the petitioners to present a petition bearing the number of signatures thus prescribed; and where one who bases a right upon such petition seeks to compel an officer to accept and act upon it on the ground that a sufficient petition has been presented such person has the burden of showing that the petition on which he relies is signed by the number of electors the statute prescribes.

However, the provision in question here (requiring a petition to be signed by a certain per cent of the electors) is not without precedent in the legal annals of North Dakota. Thus the original provision of the North Dakota Constitution relating to' the amendment of the Constitution by initiative petition provided:

"Any amendment or amendments to this constitution may also be proposed by the people by the filing with the Secretary of State, at least six months previous to a general election, of an initiative petition containing the signatures of at least twenty-five per cent of the legal voters in each of not less than one-half of the counties of the state." North Dakota Constitution, § 202, as amended. N. D. Laws 1915, pp. 401, 402.

If the lawmakers had intended that a petition for a return to the former system of city government should require only the signatures equal to forty per cent of the votes cast for president of the city commission at the preceding general municipal election they would doubtless have said so. What they did say (and it must be presumed they meant what they said) is that such petition must be signed by forty per cent of the electors of the city.

The city auditor refused to certify that a sufficient petition had been filed on the ground that the petition which was presented was not in fact signed by the requisite number of electors, and in our opinion the city auditor was correct in this view.

The trial court found (and these findings are not challenged) that at the last general municipal election held in the city of Grand Forks in April, 1930, the voters' register contained the names of 7487 electors; and that the voters' register prepared for the general election held November 8, 1932, contained the names of 9152 voters. The petition

therefore did contain the signatures of more than forty per cent of the votes cast for all candidates for president of the city commission at the last preceding general municipal election, but .fell far short of containing the signatures of forty per cent of the qualified voters of the city as disclosed by the voters' register at the last general election. There is no showing as to the actual number of voters in the city of Grand Forks at this time. But certainly it is more probable that the voters' register at the general election in 1932 is a more accurate list of the number of electors than the voters' register at the general municipal election in 1930. It is presumed that a thing once found to ·exist continues as long as usual with things of that nature. Comp. Laws 1913, § 7935, subd. 28.. In absence of showing to the contrary it is reasonable to assume that there are as many electors in the city of Grand Forks at this time as there were in November, 1932.

Upon the showing made in this case the city auditor was justified in refusing to certify that a sufficient petition had been filed.

The views we have expressed render it unnecessary to consider certain other questions argued, as they are not necessary to a determination of the case and any expression of opinion would be in the nature of obiter dicta. The trial court was correct in denying the application for a writ of mandamus; The judgment appealed from is affirmed.

Burr, Ch. J., Moellring, Nuessle and Burke, JJ., concur. .