[No. 30154. Department One. July 29, 1947.]

THE STATE OF WASHINGTON, *on the Relation of Kenneth Billington, Respondent,* v. FRED W. SINCLAIR *et al., Appellants.*[1]

[1]Reported in 183 P. (2d) 813.

*Donald Simpson* and *William C. Bates,* for appellants.

*Ned Hall,* for respondent.

ABEL, J.—The facts in this case are not in dispute. Plaintiff, a resident and taxpayer of the city of Vancouver, Washington, brought this action for a writ of mandate to compel defendants, the mayor and commissioners of the city of Vancouver, to pass an ordinance or submit it to a vote of the city electors. The 1940 census gave Vancouver a population of 18,788. On June 15, 1942, the city, being then a municipal corporation of the third class, adopted the commission form of government under which it is now operated.

Plaintiff filed with the city clerk of Vancouver a petition which conformed with the provisions of Rem. Rev. Stat., § 9110 [P.P.C. § 292-41], concerning special elections under the city's form of government. This petition followed the provisions of Rem. Rev. Stat., §§ 8951, 8952, 8953, and 8954 [P.P.C. §§ 364-3, -5, -7, -9] which sections provide that a city of more than twenty thousand population may adopt a charter and qualify as a city of the first class. The city clerk found the petition to be sufficient, made his certificate to that effect, and presented the petition to the defendant commissioners.

The petition requested the mayor and city commissioners to enact or submit to a vote of the people a proposed ordinance contained in the petition. The proposed ordinance, if passed, would initiate the statutory proceedings to adopt a charter and to qualify the city of Vancouver as a city of the first class. The defendant mayor and commissioners have refused either to enact the ordinance or to submit it to a vote of the people, and they will continue to refuse to act unless ordered by this court to do so.

The superior court of Clark county entered judgment, ordering defendants forthwith to take action upon the pe-

tition by enacting the ordinance or by submitting it to a vote of the people of the city of Vancouver, and, further, ordered issuance of a peremptory writ of mandate compelling such action. Defendants, the mayor and commissioners of the city of Vancouver, have appealed.

Appellants claim error because of the fact that the city of Vancouver adopted the commission form of government on June 15, 1942, and Rem. Rev. Stat., § 9112 [P.P.C. § 392-45], provides, in part, as follows:

"Any city which shall have operated for more than six years under the provisions of this act may abandon such organization hereunder and accept the provisions of the general law of the state of Washington applicable to cities of its population."

The petition upon which this action is based was filed with the city clerk of Vancouver on February 13, 1946, and appellants claim that, in the event the commissioners of the city of Vancouver enacted this ordinance or submitted it to a vote of the people, they would be violating the provisions of Rem. Rev. Stat., § 9112, by requiring the abandonment of the commission form of government before the expiration of the six-year period.

Respondent claims that the language of Rem. Rev. Stat., § 9112, is not exclusive, but is simply one method of abandoning the commission form of government, and that, under Art. XI, § 10, of our state constitution, the residents of a city containing twenty thousand or more inhabitants have a constitutional right to frame a charter for their own government, and that this constitutional right cannot be abrogated, restricted, or limited in any manner by the legislature. This section of the constitution provides:

"Corporations for municipal purposes shall not be created by special laws; but the legislature, by general laws, shall provide for the incorporation, organization, and classification, in proportion to population, of cities and towns, which laws may be altered, amended, or repealed. Cities and towns heretofore organized or incorporated may become organized under such general laws whenever a majority of the electors voting at a general election shall so determine, and shall organize in conformity therewith; and cities or

towns heretofore or hereafter organized and all charters thereof framed or adopted by authority of this constitution shall be subject to and controlled by general laws. Any city containing a population of twenty thousand inhabitants or more shall be permitted to frame a charter for its own government consistent with and subject to the constitution and laws of this state, and for such purpose the legislative authority of such city may cause an election to be had, at which election there shall be chosen by the qualified electors of said city fifteen freeholders thereof, who shall have been residents of said city for a period of at least two years preceding their election, and qualified electors, whose duty it shall be to convene within ten days after their election, and prepare and propose a charter for such city. Such proposed charter shall be submitted to the qualified electors of said city, and if a majority of such qualified electors voting thereon ratify the same, it shall become the charter of said city, and shall become the organic law thereof, and supersede any existing charter, including amendments thereto, and all special laws inconsistent with such charter. Said proposed charter shall be published in two daily newspapers published in said city for at least thirty days prior to the day of submitting the same to the electors for their approval, as above provided. All elections in this section authorized shall only be had upon notice, which notice shall specify the object of calling such election, and shall be given for at least ten days before the day of election in all election districts of said city. Said elections may be general or special elections, and, except as herein provided, shall be governed by the law regulating and controlling general or special elections in said city. Such charter may be amended by proposals therefor submitted by the legislative authority of such city to the electors thereof at any general election, after notice of said submission published as above specified, and ratified by a majority of the qualified electors voting thereon. In submitting any such charter or amendment thereto, any alternate article or proposition may be presented for the choice of the voters, and may be voted on separately without prejudice to others."

The first legislature that met, after the adoption of the constitution, passed Laws of 1890, chapter 7, p. 140, § 12 (Rem. Rev. Stat., § 8933 [P.P.C. § 391-3]), which has been modified, but is still the law, and which provides, in part, that cities having twenty thousand or more inhabitants,

according to the last preceding Federal or state census, shall constitute cities of the first class, and shall be organized and governed under the laws relating to cities authorized to frame and adopt their own charters. The same legislature passed the following acts, which are still the law:

Laws of 1890, chapter 7, p. 143, § 23 (Rem. Rev. Stat., § 8947 [P.P.C. § 364-1]):

"Cities of the first class shall be organized and governed according to the law providing for the government of cities having a population of twenty thousand or more inhabitants, in accordance with section ten, article eleven (11), of the constitution of this state."

Laws of 1890, p. 215, § 1 (Rem. Rev. Stat., § 8951):

"Any city now having, or which may hereafter have, a population of twenty thousand or more inhabitants may frame a charter for its own government."

Laws of 1890, p. 216, § 2 (Rem. Rev. Stat., § 8952), provides for a census enumeration to determine the city's population.

 In the interpretation of constitutional provisions, courts are required to give effect to the intent and purpose of the framers. In 16 C. J. S. 51, § 16, the rule is stated as follows:

' "The fundamental purpose in construing a constitutional provision is to ascertain and give effect to the intent of the framers and of the people who adopted it. The court, therefore, should constantly keep in mind the object sought to be accomplished by its adoption, and the evils, if any, sought to be prevented or remedied. Effect should be given to the purpose indicated by a fair interpretation of the language used. The intent may be shown by implications as well as by express provisions."

In 1 Cooley's Constitutional Limitations (8th ed.) 124, 127, the same rule is stated as follows:

"The object of construction, as applied to a written constitution, is *to give effect to the intent of the people in adopting it*. In the case of all written laws, it is the intent of the lawgiver that is to be enforced. But this intent is to be found in the instrument itself. It is to be presumed that language has been employed with sufficient precision to convey it,

and unless examination demonstrates that the presumption does not hold good in the particular case, nothing will remain except to enforce it. . . .

" 'Whether we are considering an agreement between parties, a statute, or a constitution, with a view to its interpretation, the thing which we are to seek is *the thought which it expresses.* To ascertain this, the first resort in all cases is to the natural signification of the words employed, in the order of grammatical arrangement in which the framers of the instrument have placed them. If, thus regarded, the words embody a definite meaning, which involves no absurdity, and no contradiction between different parts of the same writing, then that meaning, apparent on the face of the instrument, is the one which alone we are at liberty to say was intended to be conveyed. In such a case there is no room for construction. That which the words declare is the meaning of the instrument, and neither courts nor legislatures have a right to add to or take away from that meaning.' "

Rottschaefer on Constitutional Law, p. 18, states the rule as follows:

"The judicial duty in passing on the constitutionality of legislation is to determine its conformity to constitutional requirements. The purpose is to ascertain the intention of the people from whom the constitution emanated. The most important single factor in determining that intention is the language in which it is expressed."

In examining this section of the constitution, we find that the verbs "shall" and "may" are used, and it is important to consider the effect of these words in determining whether the constitutional provision is mandatory or permissive. The distinction between these words is set out in 50 Am. Jur. 36, § 18:

"Statutes, or particular provisions of statutes, may be mandatory or prohibitory, or they may be directory, permissive, or discretionary, or one provision of a statute may be mandatory, and another directory. Statutes may also be permissive as to some matters and mandatory as to others."

On p. 47, § 24, of the same text, it is stated:

"There is no well-defined rule by which directory provisions in a statute may, in all circumstances, be distinguished from those which are mandatory. In the

determination of this question, as of every other question of statutory construction, the prime object is to ascertain the legislative intention as disclosed by the terms of the statute, in relation to the scope, history, context, provisions, and subject matter of the legislation, the spirit or nature of the act, the evil intended to be remedied, and the general object sought to be accomplished."

And, on p. 49, § 28, the rule is given as follows:

"The intention of the legislature as to the mandatory or directory nature of a particular statutory provision is determined primarily from the language thereof. Words or phrases which are generally regarded as making a provision mandatory, include 'shall,' and 'must.' On the other hand, a provision couched in permissive terms is generally regarded as directory or discretionary. This is true of the word, 'may.' "

In 16 C. J. S. 120, § 61, the rule is stated as follows:

"As stated in Corpus Juris, it is an established general rule that constitutional provisions are to be construed as mandatory unless, by express provision or by necessary implication, a different intention is manifest. Usually, therefore, constitutional provisions are mandatory rather than directory, and there are expressions to the effect that all constitutional provisions are mandatory. The intention of those who framed and adopted the constitution has, however, been considered, and, while there is a strong presumption in favor of its being mandatory, according to some cases, certain detailed provisions are to be treated as directory only, and if it appears from the express terms of a provision, or by necessary implication from the language used, that it was intended to be directory only, it will be so construed.

"A declaration of a constitution that the provisions of the constitution are mandatory, or mandatory and prohibitory, unless by express words they are declared to be otherwise, has been considered in declaring or recognizing that particular provisions are mandatory. Such a declaration applies to all provisions of the constitution.

"The word 'shall' or 'ought,' as used in a constitutional provision, is usually imperative or mandatory, and the word 'may' does not necessarily have a permissive import, but sometimes means 'shall' or 'must.'

"Mandatory constitutional provisions are binding on all departments of the government. Long usage can neither

repeal, nor justify the violation of, such provisions, and disobedience or evasion is not permissible, even though the best interests of the public might apparently be promoted in some respects."

In the case of *Spokane County ex rel. Sullivan v. Glover*, 2 Wn. (2d) 162, 97 P. (2d) 628, this court had under consideration the use of the verb "shall" in discussing a statute regarding the collection of taxes, and we made the following observation:

"Generally speaking, however, where the provisions affect the public interest or are intended to protect a private citizen against loss or injury to his property, they are held to be mandatory rather than directory. 59 C. J. 1076 *et seq.*, § 633; 25 R. C. L. 770 *et seq.*, §§ 17, 18. Always, however, the prime consideration is the intent of the legislature as reflected in its general, as well as its specific, legislation upon the particular subject."

In examining this section of our state constitution, we find that it starts out by providing that the legislature, by general laws, shall provide for the incorporation, organization, and classification of cities in proportion to population, and, pursuant to this provision of the constitution, the legislature of 1889-1890 passed the laws heretofore referred to (Rem. Rev. Stat., §§ 8933, 8947, 8951, 8952).

The same section of the constitution then provides that such laws may be altered, amended, or repealed. Following this is a provision that cities and towns organized or incorporated before the adoption of the constitution may become organized under the general laws. Then there is a provision that cities or towns ". . . heretofore or hereafter organized and all charters thereof framed or adopted by authority of this constitution shall be subject to and controlled by general laws."

We have held, in numerous cases, beginning with *Tacoma Gas & Electric Light Co. v. Tacoma*, 14 Wash. 288, 44 Pac. 655, and down to *Martin v. Tollefson*, 24 Wn. (2d) 211, 163 P. (2d) 594, that city charters are subject to the control of the general laws of the state. This interpretation is sound because of the specific provision of the constitution

that all city charters shall be subject to and controlled by general laws.

■ The next provision is controlling of the instant case, and will, therefore, be repeated. It is:

" . . . Any city containing a population of twenty thousand inhabitants or more shall be permitted to frame a charter for its own government consistent with and subject to the constitution and laws of this state, and for such purpose the legislative authority of such city may cause an election to be had, at which election there shall be chosen by the qualified electors of said city fifteen freeholders thereof, . . . "

It will be noticed that the constitutional provision is that " . . . *Any city containing a population of twenty thousand inhabitants or more shall be permitted to frame a charter* . . . " (Italics ours.) The framers of the constitution could not have used more emphatic language in granting a right to the inhabitants of a city containing a population of twenty thousand or more. There is no qualification or reservation of this right.

■■ Of course, in construing this constitutional provision, we must keep in mind the rule that the constitution is a limitation of power, and that the legislature is supreme, except as its power is limited by the constitution. There is a further rule that all doubts or ambiguities are to be resolved in favor of the constitutionality of an act of the legislature. See *State ex rel. Banker v. Clausen,* 142 Wash. 450, 253 Pac. 805, and the cases therein cited.

■ Although this particular question has never been directly passed upon, we have at least indirectly held that the right of a city, with a population of more than twenty thousand people, to adopt a charter and become a city of the first class is inviolate. The case that comes closest to this question is *Walker v. Spokane,* 62 Wash. 312, 113 Pac. 775, Ann. Cas. 1912C, 994, in which the question involved was the right of the people of the city of Spokane to adopt a charter providing for five commissioners, with certain limitations on the authority of the mayor, and dividing the city government into five different departments, the claim being

made that the charter violated certain statutes. In discussing this question, we stated:

"It may be conceded from the outset that, while cities of the first class have the constitutional right to frame their own charters, the charters so framed are subject to, and controlled by, general laws. Const., art 11, § 10. And this is all the constitutional limitation that there is. So that it becomes our duty to see if any of the provisions of the charter are in contravention of any legislative enactment."

Apparently, as early as the above case, which was decided in 1911, this court assumed that cities of the first class had a constitutional right to frame their own charters and that "the charters so framed are subject to, and controlled by, general laws." And then we stated: "And this is all the constitutional limitation that there is."

The above quotation was set forth in full in the case of *State ex rel. Ennis v. Superior Court,* 153 Wash. 139, 279 Pac. 601, and, in the case of *State ex rel. Griffiths v. Superior Court,* 177 Wash. 619, 33 P. (2d) 94, we stated as follows:

"While the charter framed by the city is subject to, and controlled by, general laws, the limitation simply means that the provisions of the charter shall not be in contravention of any legislative enactment. *Walker v. Spokane,* 62 Wash. 312, 113 Pac. 775, Ann. Cas. 1912C, 994."

The same point, in the case of *Walker v. Spokane, supra,* was cited with approval in the case of *Ayers v. Tacoma,* 6 Wn. (2d) 545, 108 P. (2d) 348.

In the case of *Hindman v. Boyd,* 42 Wash. 17, 84 Pac. 609, a writ of mandate had been issued in the trial court to compel the municipal authorities to submit certain charter amendments to a vote of the people, and, although the following was not pertinent to the decision, this court stated:

"It is the evident policy of the state constitution that the charters of cities of the first class and amendments thereto shall be subject to the control of general laws. Const., art. 11, § 10. The power is vested in the people to adopt their own charter, and also to amend it; but the matter is subject to the control of general laws."

The case of *Hartig v. Seattle,* 53 Wash. 432, 102 Pac. 408, involved the validity of an amendment to the charter of the

city of Seattle, commonly known as the initiative and referendum amendment, and the effect of an amendment which was adopted pursuant thereto. The referendum provided:

" ' . . . and there is further reserved by a provision made for the exercise by the people of Seattle of the power, at their own option, to require submission to the vote of the qualified electors, and thereby to approve or reject at the polls any ordinance, or any section, item or part of any ordinance, dealing with any matter within the realm of local affairs or municipal business, which may have passed the city council and mayor.' "

The question involved was whether an application for a license to sell intoxicating liquors could be acted upon by the mayor and city council, or whether it should have been submitted to the voters. In discussing the question, this court said:

"The constitution provides that any city, containing a population of 20,000 inhabitants or more, shall be permitted to frame a charter for its own government, consistent with and subject to the constitution and laws of this state. So that, under the power of the constitution, subject to the limitation above mentioned, there can be no question of the right of the city to adopt and carry into effect the initiative and referendum plan of government; for it can scarcely be contended that this plan is inconsistent with a republican form of government, the central idea of which is a government by the people. "

In the case of *State ex rel. Linn v. Superior Court,* 20 Wn. (2d) 138, 146 P. (2d) 543, the relator had filed with the clerk of the city council a petition, in which the signers had demanded that the city council submit to the voters of Seattle a proposed amendment to the city charter. The petitioners had asked that the proposed amendment be submitted at an approaching election, and the city council rejected the petition as not having been filed within the time required by law, directing, however, that the petition be placed on file. Relator asked for a writ of mandamus in the trial court, and an order was entered denying the writ and dismissing the proceedings. The case came before this court on a writ of certiorari, and we held that the constitutional provision in

Art. XI, § 10, of the constitution, requiring the giving of notice is mandatory, and that the phrase "legislative authority," as used therein, includes the voters, acting by way of an initiative or referendum. In discussing the question, we stated:

"Rem. Rev. Stat., § 9090 [P. C. § 897], provides for a commission form of government in cities having a population of less than thirty thousand persons. This form of government was not known in our state prior to the enactment of chapter 116, Laws of 1911, but it would be unreasonable to construe the constitutional provision as not now applying to a municipality which has adopted that form of city government. It is true that, at the time of the adoption of the constitution, the people in this state did not participate in legislation by means of the initiative or referendum, but since the enactment of chapter 186, Laws of 1903, the people of any city having a population of over twenty thousand persons may so participate directly in their municipal government, and without question are an important portion of the legislative authority of such city."

In discussing this section of the constitution, we stated, in *Martin v. Tollefson, supra,* at p. 216:

"We agree with appellants that § 10 of Art. XI of the state constitution is chiefly concerned with grants. The people, under our system of government, are the source of all governmental power, and they adopted the constitution for the purpose of creating certain agencies through which that power should be exercised. In so doing, they made a grant of legislative power directly to the cities in § 10, Art. XI. We quote the exact terms of this grant:

" 'Any city containing a population of twenty thousand inhabitants or more shall be permitted to frame a charter for its own government consistent with and subject to the constitution and laws of this state.' "

Appellants cite the cases of *State ex rel. Alexander v. Evanson,* 64 N. D. 603, 255 N. W. 98, and *Meier v. City Council of Boise City,* 43 Idaho 693, 254 Pac. 221. We have examined both of these cases and, since they are not based upon the same constitutional provision which we have in this state, their holdings do not apply to the instant case.

The judgment of the lower court is affirmed.

MALLERY, C. J., JEFFERS, and HILL, JJ., concur.

MILLARD, J. (dissenting)—I agree with counsel for appellants that the ordinance proposed is invalid, in view of the fact that it would require abandonment by the city of Vancouver of the commission form of government prior to the expiration of six years from the date of adoption of that form of government. That this is violative of the statute (Rem. Rev. Stat., § 9112) is patent. The obvious purpose of the six-year limitation is to prevent rapid and recurrent fluctuations in the governmental organization of cities. In *State ex rel. Alexander v. Evanson*, 64 N. D. 603, 255 N. W. 98, it is observed respecting a similar provision in the laws of North Dakota,

"It will be noted that the lawmakers provided that as a prerequisite to the right to petition for such election the city must have operated under the commission plan of government for at least six years. The lawmakers deemed it wise to provide that where the commission plan was adopted it must have a fair trial."

See, also, *Meier v. City Council of Boise City*, 43 Idaho 693, 254 Pac. 221. The provisions of the statutes (Rem. Rev. Stat., §§ 9090-9113 [P.P.C. §§ 392-1 to 392-47]) for the adoption, operation, and abandonment of the commission form of government are specific. To adopt a freeholders' charter and to organize Vancouver as a city of the first class would be an abandonment of the commission form of government. In framing the charter under Art. XI, § 10, of the state constitution and the statute (Rem. Rev. Stat., § 8953) the elected freeholders would not be obligated to adopt any particular form of government; they could provide for a commission form or some other form of city government. Nevertheless, if a commission form of government were adopted and followed the pattern provided by present statutory provisions for the commission form of government, the charter would create a new and different form of government.

Rem. Rev. Stat., § 8948 [P.P.C. § 367-19], provides the form of organization and the manner and mode in which cities of the first class shall exercise the powers which are given by law to such cities. Under the foregoing provision

and other applicable statutes the powers of the city would be those prescribed for cities of the first class (Rem. Rev. Stat., § 8966 [P.P.C. § 364-11]) rather than those prescribed by Rem. Rev. Stat., § 9034 [P.P.C. § 379-57], for cities of the second class as obtains at present. See Rem. Rev. Stat., §§ 9093, 9100 [P.P.C. § 392-21, -7].

By adoption of a charter as a city of the first class Vancouver would unequivocally abandon its present statutory commission form of government,

". . . but when a new charter is adopted, materially changing the former municipal organization, usually the old charter provisions in whatever form existing become inapplicable to the new government, especially when they are inconsistent or out of harmony with the new organization. Therefore, the general rule is that the adoption of a new charter abrogates or repeals the former one. . . ."

1 McQuillin, Municipal Corporations (2d ed., rev. 1940) 460, § 156.

I cannot agree that the people of a city containing twenty thousand or more residents have a constitutional right to frame a charter for their own government, which right cannot be restricted or limited in any manner by the legislature. The constitutional provision (Art. XI, § 10, state constitution) is clear and express in its direction to the legislature to provide by general laws for the incorporation, organization, and classification in proportion to population of cities and towns which laws may be altered, amended, or repealed.

That section further provides that cities or towns heretofore or hereafter organized and all charters thereof framed or adopted by the authority of the constitution shall be subject to and controlled by general laws. The constitutional provision cited is not self-executing, and the legislature has a broad reserved power of control which it exercises, subject only to the limitation that it must act by general rather than by special laws. *In re Cloherty*, 2 Wash. 137, 144, 27 Pac. 1064; *State ex rel. Snell v. Warner*, 4 Wash. 773, 31 Pac. 25, 17 L. R. A. 263; *State ex rel. Fawcett v. Superior Court*, 14 Wash. 604, 45 Pac. 23, 33 L. R. A. 674; *State ex rel. Seattle v. Carson*, 6 Wash. 250, 33 Pac. 428; *Dalton v. Clarke*, 18 Wn. (2d) 322, 139 P. (2d) 291.

We recently held that, so long as the legislature acts by general laws rather than special laws, its acts will supersede and modify the provisions of existing charters to the extent that they are in conflict with the statute. *Martin v. Tollefson,* 24 Wn. (2d) 211, 163 P. (2d) 594, and *Oakwood Co. v. Tacoma Mausoleum Ass'n,* 22 Wn. (2d) 692, 157 P. (2d) 595, 161 P. (2d) 193.

The constitution is clear, as are our opinions interpreting the pertinent provisions of the constitution, that the power reserved to the legislature is broad and comprehensive and grants to the legislature the authority to impose reasonable restrictions in the matter of procedure in the adoption, revision, and amendment of charters of municipal corporations. A reasonable restriction is the six-year-trial period required by Rem. Rev. Stat., § 9112, for cities which have adopted the statutory commission form of government.

The judgment should be reversed with instructions to dismiss the action.