[No. 74130-1.    En Banc.]
Argued September 11, 2003.    Decided September 25, 2003.

NORM MALENG, *as King County Prosecuting Attorney*, *Respondent*, v. KING COUNTY CORRECTIONS GUILD, *Appellant*.

*Albert R. Malanca, Kenneth G. Kieffer*, and *Donald S. Cohen* (of *Gordon, Thomas, Honeywell, Malanca, Peterson & Daheim*) and *Jared C. Karstetter, Jr.* (of *Law Offices of Jared C. Karstetter, Jr., P.S.*), for appellant.

*Norm Maleng, Prosecuting Attorney*, and *Janine E. Joly, Deputy*, for respondent.

JOHNSON, J. — This case involves a preelection challenge to a proposed initiative. Specifically, we are asked to determine whether proposed Initiative 18 can direct the King

County Council to place before the voters a proposal to reduce the size of the council from 13 to 9 members.[1] The King County Corrections Guild was granted accelerated review by this court of its appeal from a King County Superior Court order finding the proposed initiative outside the scope of the initiative power under article XI, section 4 of the Washington State Constitution and King County Charter (KCC) article 8, section 800. We reverse the superior court.

## FACTS

The guild filed a petition for Initiative 18 on February 5, 2003, with the King County Council clerk. Clerk's Papers (CP) at 48-49. On March 6, 2003, the King County Prosecutor submitted a letter to the guild indicating he would be filing an action in King County Superior Court to enjoin the initiative from being placed on the November 2003 election ballot because its subject matter was beyond the scope of the initiative power. CP at 5-6, 23-24. Despite the prosecutor's objection, the petition for Initiative 18 was approved as to form, which enabled the guild to collect approximately 71,500 signatures for the petition. The ballot title for Initiative 18 would appear on the ballot in the following form:

"Shall the King County Council propose a charter amendment to voters reducing in phases the number of council members from thirteen to nine? Yes or No?"

CP at 103. Initiative 18 provides, in relevant part, as follows:

AN ORDINANCE proposing an amendment to the King County Charter reducing in size the King County council from thirteen to nine members; consequently reducing council voting requirements related to the size of the council; phasing in the reduction of council members with elections and terms of

---

[1] Initiative 18 also purports to direct the council to submit a proposal to phase in the reduction in council members through elections and terms of office and to amend the charter's voting requirements to reflect the reduction.

office . . . [which] shall be submitted to the qualified voters of King County for their approval and ratification or rejection, at the next general election to be held in this county occurring more than forty-five days after the enactment of this ordinance, or in the event that the Council fails to enact this ordinance, at the next general election to be held in this county occurring more than one-hundred thirty-five days after presentation of the Petition.

CP at 104. Under the ordinance, the matter is to be placed before the voters if the council fails to take action.

Accordingly, we must resolve two issues in this case: (1) whether Initiative 18 is outside the scope of the initiative power and, if not, (2) whether it is consistent with the provisions of the KCC.

## PROCEDURAL HISTORY

The prosecutor filed a complaint to enjoin Initiative 18 on April 1, 2003, and a motion for judgment on the pleadings on May 6, 2003. CP at 3-26, 30-68. The matter came before the King County Superior Court on June 12, 2003, for oral argument on the prosecutor's motion. Report of Proceedings at 1-44. The trial judge entered an order granting the motion on June 16, 2003. CP at 241-46. The trial judge held the proposed initiative was outside the scope of the initiative power currently reserved under the Washington State Constitution and the KCC. CP at 254. The trial judge relied primarily on our decision in *Ford v. Logan*, 79 Wn.2d 147, 483 P.2d 1247 (1971).

The guild sought direct review by this court and filed emergency motions for accelerated review and a stay of enforcement of the superior court's order in the event the proposed initiative is allowed on the November 2003 election ballot. Commissioner's Ruling at 1. The prosecutor concurred that direct accelerated review is appropriate,[2] but opposed the stay. Commissioner's Ruling at 1-2.

___

[2] A party may seek direct review by the Supreme Court of a superior court decision under RAP 4.2.

We reverse the superior court's order. First, Initiative 18, which is a proposal to amend the KCC, is not outside the scope of the initiative power. Unlike *Ford*, where we held that repealing the KCC was outside the scope of the initiative power, this case involves amending the charter. Second, Initiative 18 is not precluded under the provisions of the KCC.

## ANALYSIS

We first have to decide whether Initiative 18 is outside the scope of the initiative power reserved to the citizens of King County under article II, section 1 and article XI, section 4 of the Washington State Constitution.

■ One of the foremost rights of Washington State citizens is the power to propose and enact laws through the initiative process. CONST. art. II, § 1(a). "The passage of an initiative measure as a law is the exercise of the same power of sovereignty as that exercised by the legislature in the passage of a statute." *Love v. King County*, 181 Wash. 462, 469, 44 P.2d 175 (1935).

■■ As a general rule, courts are reluctant to rule on the validity of an initiative before its adoption. This reluctance stems from our desire not to interfere in the electoral process or give advisory opinions. *Philadelphia II v. Gregoire*, 128 Wn.2d 707, 911 P.2d 389, *cert. denied*, 519 U.S. 862 (1996).

We have recognized an exception to this general rule to allow judicial review of a proposed initiative to determine if it is beyond the scope of the initiative power. *See Philadelphia II*, 128 Wn.2d 707; *Seattle Bldg. & Constr. Trades Council v. City of Seattle*, 94 Wn.2d 740, 620 P.2d 82 (1980). We have held that the initiative power is limited to doing acts that are legislative in nature. *Philadelphia II*, 128 Wn.2d at 717-18 (citing *Ford*, 79 Wn.2d at 154-55).

The trial court below ruled that Initiative 18 is not legislative in nature and is, therefore, not within the scope of the initiative power. Here, the respondent urges us to

adopt the trial court's position that the initiative proposal to amend the KCC "is not a 'mere legislative act' but instead an act 'of a higher order.' "[3] The trial court relied on *Ford* to support its conclusion.

In *Ford*, we were asked to determine whether the King County electorate had the power to repeal the KCC by initiative. In the context of deciding whether the KCC could be repealed, we noted that a home rule charter is the organic law of a county, just as the constitution is for the State. *Ford*, 79 Wn.2d at 155. Upon proper examination of the Washington State Constitution, we found no provision that gives the electorate the legislative authority to directly repeal the organic law that allocates legislative powers. We stated the following:

> [T]his act of amending or repealing the basic organic instrument of government is of a higher order than the mere enactment of laws within the framework of that organic structure. This distinction has been prudently and thoughtfully included in the structure of American constitutional government, for to permit *direct action* by a majority to change a basic form of government would enable any given majority to remove all protections contained within constitutional frameworks.

*Ford*, 79 Wn.2d at 155 (emphasis added). Although the initiative process is a means by which the people can exercise legislative authority to enact or prohibit laws, we concluded that directly amending the state constitution was not a legislative act and, consequently, not within the initiative power reserved to the voters. *Ford*, 79 Wn.2d at 156. Based on this reasoning, we held that the KCC could not be repealed by initiative. *Ford*, 79 Wn.2d at 157.

*Ford*, however, did not address the issue of whether the KCC could be amended by initiative. *Ford* expressly recognized this distinction in discussing our previous case, *State ex rel. Linn v. Superior Court*, 20 Wn.2d 138, 146 P.2d 543 (1944):

---

[3] Order on Pl.'s Mot. for J. on the Pleadings at 4.

where we held that, by the terms of Const. art. 11, § 10, amendment of certain city charters was rendered a legislative act which could be accomplished by initiative. We need not here decide whether a similar conclusion is dictated by the language of Const. art. 11, § 4 (amendment 21), for, as we noted at the outset, the initiative now before us proposes repeal, not amendment, of the King County Charter.

*Ford*, 79 Wn.2d at 156. Further, the *Ford* opinion recognizes this distinction when it discusses article XI, section 4: "[a]lthough article 11 makes provision for amendments to the charter, it contains no express method for repeal." *Ford*, 79 Wn.2d at 157. Here, we are asked to review a proposed amendment, rather than a repeal, of the KCC. *Ford* was expressly limited to an attempt to repeal, not amend, the KCC, and does not control the issue in this case.[4]

■ Instead, the result in this case is controlled by article XI, section 4 and our cases interpreting this and other similar provisions. Article XI, section 4 provides that county charters "may be *amended* by proposals therefor submitted by the legislative authority of said county to the electors thereof . . . ." (Emphasis added.) Similarly, article XI, section 10 relating to city charter amendments has analogous language to that of article XI, section 4 relating to county charter amendments. Article XI, section 10 states, in pertinent part:

Such charter may be amended by proposals therefor submitted by the legislative authority of such city to the electors thereof at any general election after notice of said submission . . . and ratified by a majority of the qualified electors voting thereon.

In this case we have to decide whether this "legislative authority" under article XI includes initiative proposals. We conclude it does, and find support for this conclusion in *Linn* and other cases.

_____

[4] The majority opinion in *Ford* was signed by three justices, with two justices concurring in the result. In a proper case, the distinctions drawn in *Ford* might be subject to reexamination. Since we conclude *Ford* does not control the outcome in this case, however, we need not address those issues.

*Linn* involved an issue that is almost directly on point to the issue presented here. In *Linn*, we were asked to decide whether it was within the scope of the people's initiative power to propose and enact amendments to the Seattle City Charter. We concluded that the words "legislative authority" as used in article XI, section 10 of the Washington State Constitution "should be held to include the people acting in accordance with their right to initiate legislation pursuant to existing laws . . . ." *Linn*, 20 Wn.2d at 143. Thus, we held that amending the city charter was a legislative act that could be implemented by the people through the initiative process if statutory notice requirements were met. *Linn*, 20 Wn.2d at 151-52.

Our holding in *Linn* is further supported by other case law. Several Washington cases have demonstrated the determinative impact of the people's constitutional right to initiate local charter amendments. For example, in *Reeves v. Anderson*, 13 Wash. 17, 42 P. 625 (1895) and *State ex rel. Billington v. Sinclair*, 28 Wn.2d 575, 183 P.2d 813 (1947), we concluded that article XI, section 10 extends charter amendment authority to the people in their legislative capacity. We also held in those cases that the constitutional reservation of the people's right to adopt and amend charters under article XI, section 4 controls. *See also Minish v. Hanson*, 64 Wn.2d 113, 115-16, 390 P.2d 704 (1964). The same reasoning applies here.

We conclude that voter-initiated charter amendments are within the people's legislative authority contemplated under article XI, sections 4 and 10. Thus, Initiative 18 is within the scope of the people's initiative power. We must next decide, however, whether that authority is restricted under the provisions of the KCC governing amendment procedures. We find no such restriction.[5]

---

[5] Unlike article XXIII, section 1 of the Washington State Constitution which gives the legislature the exclusive authority to amend the constitution, article 8, section 800 of the KCC does not restrict the people's authority to amend the county charter.

■■ We liberally construe initiative proposals so as to give them effect, and a hypertechnical construction which deprives them of effect is to be avoided. *Ford*, 79 Wn.2d at 170 (citing *State ex rel. Donohue v. Coe*, 49 Wn.2d 410, 302 P.2d 202 (1956)). Under this standard of review, the burden is on the challenger of an initiative proposal to show that the people's legislative authority to effectuate charter amendments is restricted. Here, the respondent failed to demonstrate that there is such a restriction in the KCC.

■ The respondent argues that the council has the sole legislative authority to propose an ordinance to amend the KCC. However, the respondent fails to cite to any case law to support this argument and, instead, relies exclusively on the language of the KCC. Article 8, section 800 of the KCC outlines the following process for charter amendments:

> *The county council may propose amendments* to this charter by enacting an ordinance to submit a proposed amendment to the voters of the county at the next general election occurring more than forty-five days after the enactment of the ordinance.

(Emphasis added.) As stated, under this section any amendments to the KCC *may* be proposed by the council in the form of an ordinance. To become effective, the ordinance must then be submitted to and approved by a majority of the voters. Contrary to the respondent's assertion, no language in KCC article 8, section 800 references exclusivity of the council's role in initiating the charter amendment process.[6] For example, the word *"may"* in the provision is permissive and does not exclude other means of effectuating a charter amendment. Furthermore, we concluded in *Linn*, 20 Wn.2d at 145, that "[i]t is difficult to imagine a more comprehensive phrase than 'legislative authority,'" and to hold that the term "legislative authority" included

---

[6] The language of KCC article 8, section 800 illustrating the authority to effectuate a charter amendment is different from the language in the constitution which vests the exclusive authority to make a constitutional amendment with the legislature. Unlike the process of implementing a constitutional amendment, article 8, section 800 does not preclude an initiative proposal to amend the KCC.

only the council "would unduly restrict the constitutional language."[7] *Linn*, 20 Wn.2d at 147.

KCC article 8, section 800 is also consistent with the governing provision of the Washington State Constitution article XI, sections 4 and 10, which provides that charters may be amended by proposals submitted by the legislative authority to the voters. Here, the council is a local legislative body that has permissive authority to propose charter amendments. Neither the provisions of KCC nor the provisions of the Washington State Constitution state that this authority is exclusive.

■ KCC article 8, section 800 can also be harmonized with KCC article 2, section 230.50 which permits the enactment of voter-initiated ordinances. The initiative process of section 230.50 is one by which the people can exercise the legislative authority that is permissively reserved to the council under KCC article 8, section 800. Neither provision provides, however, that the council could solely amend the KCC. Consistent with KCC article 8, section 800 and article XI, section 4 of the Washington State Constitution, KCC article 2, section 230.50 requires both the council and the electorate to implement a charter amendment. The relevant language of KCC article 2, section 230.50 is as follows:

> "Ordinances . . . may be proposed by filing with the county council petitions bearing signatures of registered voters of the county equal in number to not less than ten percent of the votes cast in the county for the office of county executive at the last preceding election for county executive."

CP at 107.

The plain meaning of this provision reveals that ordinances may be proposed by the electorate through the initiative process. Once that occurs, the council must con-

---

[7] The court in *Linn* elaborated further by stating that "[i]n the absence of restrictive words in the constitution itself, a court is not at liberty to restrict the language of the constitution, or to hold that procedure provided for the exercise of legislative authority applies to one legislative body and not to every such group." 20 Wn.2d at 152. *See also Reeves*, 13 Wash. at 22; *Billington*, 28 Wn.2d at 584-86 (confirming that the council's power to amend the KCC is not exclusive).

sider the ordinances and, if not enacted, submit them to the voters. Although Initiative 18 is coined as an initiative proposal, it is legally equivalent to an ordinance proposal as it purports to follow the voter-initiated ordinance process articulated under KCC article 2, section 230.50.

Initiative 18 satisfies the two-step legislative process required under the terms of both KCC article 2, section 230.50 and the Washington State Constitution. The voters would first propose an ordinance directing the council to amend the KCC. The proposal would then be submitted to the voters for approval if it is not enacted by the council. Under this process, the people have the legislative authority to amend the KCC.

▮ In addition to KCC article 2, section 230.50, KCC article 2, section 230.75 provides that:

> An ordinance approved by the voters may be amended or repealed by an ordinance approved by a majority of the voters voting thereon at any special or general election.

Ordinance 10530 was approved by the voters in 1992 to increase the size of the King County Council to 13 members. Initiative 18 purports to amend that ordinance to reduce the council back to 9 members, the size it was before 1992. Furthermore, both KCC article 2, section 230.50 and section 230.75 authorize voter-initiated ordinances. Initiative 18 is such a proposed ordinance.

The respondent's final argument is that Initiative 18 contains some confusing, and possibly conflicting, language in the provisions regarding the initiative's implementation. Such issues are not within our narrow inquiry on whether a specific proposal is within the scope of the initiative power and will not be addressed here.

## CONCLUSION

We hold that the voters can initiate an ordinance to amend the KCC. This finding is consistent with the liberal

interpretation we accord the initiative power reserved to the people. The decision of the superior court is reversed.

ALEXANDER, C.J., and MADSEN, SANDERS, IRELAND, BRIDGE, CHAMBERS, OWENS, and FAIRHURST, JJ., concur.