[No. 164. Decided February 20, 1891.]

*In the Matter of the Application of* JOSEPH CLOHERTY, *alias* CHARLES MALONE, *for a Writ of Habeas Corpus.*

CONSTITUTIONAL LAW—DELEGATION OF LEGISLATIVE POWERS—
MUNICIPAL POLICE COURTS.

Cities of twenty thousand inhabitants, or more, have no power, under the constitutional authority given them to frame charters for their own government, to provide therein for the creation of municipal or police courts, as all such power is delegated by the constitution to the legislature.

The power conferred upon the legislature by the constitution to create additional inferior courts is not one of its original inherent powers as the supreme legislative body of the state, but is a delegated power which must be exercised in the manner pointed out, and cannot be again delegated. Such inferior courts can only be created by express enactment of the legislature.

There is no provision in the acts of March 24 and March 27, 1890 (Laws 1889-90, pp. 215, 131), for the establishment of police courts in cities of twenty thousand or more inhabitants.

*Original Proceeding in Habeas Corpus.*

*Marshall K. Snell,* for petitioner.

*W. H. Snell,* Prosecuting Attorney, and *M. B. Hoxie,* for respondent.

The opinion of the court was delivered by

STILES, J. — The petitioner, Joseph Cloherty, *alias* Charles Malone, shows that he is detained by James H. Price, sheriff of the county of Pierce, under conviction of the crime of assault and battery, committed in the city of Tacoma. This conviction was had in the police court of that city, and he was sentenced to a term of six months in the county jail of Pierce county. He prayed a writ of *habeas corpus* from this court, directed to the sheriff, and that upon the return thereof he be discharged from custody. An order to show cause was issued, and after argument in

which the petitioner, by his counsel on one side, and the sheriff by the prosecuting attorney of Pierce county and the city attorney of the city of Tacoma on the other side, were heard, the question of his discharge is for decision.

Petitioner's ground for his application is, that the police court of the city of Tacoma had no legal existence, and therefore no jurisdiction to arraign, try or convict him. The city of Tacoma is a city of the first class as defined by the act of March 24, 1890, and in the month of October, 1890, before the trial and conviction of petitioner, in pursuance of § 10, article 11 of the constitution and of the above mentioned act, its people framed and adopted a municipal charter. Of this charter this court, and all other courts in the state, are required to take judicial notice. It therefore appears that, among the other provisions contained in the charter, was one establishing a "police court," and the language of this provision was identical with the language of §§ 92, 93, 94, 95 and 96 of the act providing for the organization, classification, incorporation and government of municipal corporations, approved March 27, 1890; the sections above mentioned relating to the establishment, jurisdiction and procedure of a police court in cities of the second class. We refer to the fact that the language found in the charter and that in the act are identical as a convenient method of making known what the constitution of the police court was without copying the instrument. It thus appears that, in so far as it was possible for it to do so, the city of Tacoma endeavored to erect a court having full jurisdiction of the offense charged against the petitioner. The petitioner, however, maintains that under the constitution of the state nothing less than the express enactment of the legislature could create or establish such a court, and that, therefore, the provisions of the charter of Tacoma were mere idle declarations, without force and wholly void.

The State of Washington is a sovereign whose written constitution is her visible charter. By the constitution all the judicial power (which is a distinct branch of the sovereignty) is vested in the courts therein created, independently of all legislation. The jurisdiction of these courts is universal, covering the whole domain of judicial power, even to that growing out of the supposed existence of municipal ordinances. But to the legislature of the state the constitution delegates authority to transfer from one of the constitutional courts to another certain limited portions of the judicial power; and it may also provide new, inferior courts, not specifically mentioned in the constitution, to which may be assigned such part of the inferior judicial power as it may deem wise to transfer. The natural conclusion from this premise would be that a court for the administration of municipal ordinances must have been created by an act of the legislature.

But the respondent urges that the power to erect a court of this kind is necessarily implied from the constitutional authority given to cities of twenty thousand inhabitants to frame a charter for their own government; that this concession is equally as strong as the provisions with reference to courts, and that no harmonious construction of the instrument can be made unless the power thus contended for is allowed to exist.

An argument in many respects plausible may be built upon this foundation. But it must be remembered that, although the power to frame a charter is conferred by the constitution, no greater intendments are inferred from that fact that if it were conferred by a mere act of the legislature, since, by the same sections, these favored cities are to be at all times subject to the general laws of the state. They are not in any sense erected into independent governments; their existence as municipal governments depends upon the legislative will; their areas can be extended only

in the manner prescribed by statute; the elective franchise
is exercised under the general laws applicable to the whole
state; the power of eminent domain is not extended to them
except by statutory delegation; and their municipal legis-
lation is restricted to those subjects which rightfully belong
to them in their corporate capacity. A charter framed
under the constitutional provision is of no more or larger
force than a legislative charter, and can lawfully treat only
of matters relating to the internal management and control
of municipal affairs, subject to constitutional and legis-
lative regulations; it provides officers, ways and means,
police and other minutiæ of local administration which are
necessary to the public convenience, peace and good order;
but, for the enforcement of criminal ordinances, the consti-
tution and the legislature have provided independent courts
of competent jurisdiction in the persons of justices of the
peace. Cases are cited for our consideration, which we
shall allude to at this time.

While Washington was yet a territory, although it was
not held by any of the territorial courts, the legislature
never attempted to create municipal courts, it being taken
for granted that the organic act forbade the exercise of that
power by prescribing that the judicial power of the terri-
tory should be vested in certain courts therein named. But
in *State of Kansas v. Young*, 3 Kan. 445, it was held that
under the same organic act the legislature could provide
courts in cities. And so in *Shafer v. Mumma*, 17 Md. 331
(79 Am. Dec. 656), under the constitution of 1851, it was
held that the punishment of offenses against municipal ordi-
nances was not a judicial function at all, but merely an exer-
cise of a branch of the police power. The Kansas decision
was based upon the fact that the legislature had committed
to it all rightful subjects of legislation, which included the
power to create municipal corporations with their usual in-
cidents, and upon the view that the organic act in its pro-

visions with regard to courts had reference only to the enforcement of the laws of the territory at large. The Maryland decision goes as far as the respondent's contention; but, upon examining the constitution of that state, we find no reference whatever to the subject of municipal corporations, except a single line, which provides that they may be created by special acts. Thus the whole matter is as completely left to the legislature as any other subject over which it has unlimited jurisdiction. We think, however, that even conceding that case to have been well decided, it is the only one that can be found going that far, and that it is not applicable under our constitution, which clearly includes the administration of city ordinances among the judicial powers of the state. Nor would the offense charged against the petitioner have been within the decision of the Maryland case, since it is one against a public law of the state (code, § 808), punishable only by indictment or information.

We were referred also to *Hutchings v. Scott*, 4 Halst. 218, a case determined in 1827, where the decision was that the legislature of New Jersey had the power, under the constitution of 1776, to declare the mayor, recorder and aldermen of cities justices of the peace for the trial of certain causes. But here again the constitution contained no reference to municipal corporations, and no definition or limitation of the judicial power, excepting that § 12 prescribed the terms of judges of the supreme and common pleas courts and justices of the peace.

We may not disagree with the cases in Kansas or New Jersey, and yet hold that the mere grant of a charter of incorporation, with power to pass ordinances and prescribe penalties for their infraction, does not confer the right to create police courts. The legislature has the largest power to define crimes and provide for their punishment; but, under the constitution, it can set up no other courts than

are therein provided for the trial of persons charged with having committed those crimes. The highest authority we have on this subject, Judge Dillon, says that it is " competent for the state legislature to create municipal corporations with powers of local government, and to authorize them to adopt ordinances or by-laws, with appropriate penalties for their violation. The power to do this includes, by fair implication, the power to authorize violations of ordinances (when the acts are not criminal in their nature, or within the meaning of constitutional provisions requiring an indictment and securing the right to a jury trial) to be tried and determined in a summary manner by a local or corporation tribunal." Mun. Cor. (4th ed.), § 428. Yet §§ 427 and 428 clearly show that the author had in mind no other thought than that the local or special tribunal must be created by act of the legislature, and its jurisdiction be by it defined.

This disposes of the first proposition of the respondent; and we next consider the claim that the legislature by the act of March 24, 1890, delegated to the cities of the first class the power to create police courts. But upon this point we deem it sufficient to say that the power conferred upon the legislature to create additional inferior courts is not one of its original, inherent powers as the supreme legislative body of the state, which can be delegated by it, but is a delegated power which must be exercised in the manner pointed out, and cannot be again delegated. Nor do we see in the act mentioned any convincing sign of an intention to delegate the authority contended for, although the thirty-sixth subdivision of section 5 of the act uses unusually strong language. Part of respondent's argument on this point is based on section 7 of the act, and will be referred to later. As an illustration of the firmness with which the principle here in issue is held to by the courts in cases similar to this, we note the case of *People*

*v. Toal,* 85 Cal. 333 (23 Pac. Rep. 203). The constitu-
tion of the State of California has substantially the same
provisions with regard to courts and the charters of cities
of the higher grade as that of Washington. But it is there
provided that a charter adopted by a city must be sub-
mitted to, and have the approval of the legislature without
power of amendment before it becomes operative. The
city of Los Angeles adopted a charter which, upon its
submission to the legislature, was approved by a joint
resolution of both houses. The charter provided for a
police court, and upon a hearing similar to this, the su-
preme court held the provision establishing the court to
be void on the grounds that the power to create such courts
was vested in the legislature; that under the constitution,
to create an inferior court, there must be a law passed in
regular form, and approved by the governor; that the
legislature could pass laws by bill only; and that a joint
resolution was not a law, in the sense required. That
would seem to be a much stronger case than the one at
bar; and that decision was rendered in full view of *People
v. Hoge,* 55 Cal. 612, which held that the article of the
constitution conferring upon certain cities the power to
make their own charters was self-executing.

But now, inasmuch as the seventh section of the act of
March 24, 1890, is in these words: "Any city adopting a
charter under the provisions of this act shall have all the
powers which are now or may hereafter be conferred upon
incorporated towns and cities by the laws of this state, and
all such powers as are usually exercised by municipal cor-
porations of like character and degree, whether the same
shall be specifically enumerated in this act or not," re-
spondent contends that the unnamed "powers" thus con-
ferred include the power to provide a court of the character
of the one in question, since the same legislature, by the
act of March 27, created police courts in cities of the second,

third and fourth classes. Reverting to the last clause of § 7 first, we can see no possible way to give it any force whatever. By what standard could it be said that we should judge what are the powers "usually exercised by municipal corporations of like character and degree?" The powers of municipal corporations are only those expressly conferred, or those necessarily implied from those expressly conferred. Are the statutes of our own state and the rulings of its courts to be taken as the standard; or shall we go abroad? And where abroad? Is it the powers usually exercised by such corporations in New York or New Mexico that we shall regard? It is, we believe, usual to give to the larger cities everywhere some tribunal for the disposition of offenses against their ordinances; and it is usual to provide for the tribunal in the law or charter governing the cities; but it is almost universal for the legislature to establish the courts in question by some positive enactment. This, too, is the course followed in this state, unless cities of the first class are an exception; but were it not so, it would be a marvelous stretch of implied legislation to hold that because cities in other states were given such courts by their legislatures, by the language in discussion our legislature intended, in that manner, to waive all ceremony and establish inferior courts here. In fact, the legislation would be accomplished by our decision, and not by the law-making power of the state.

The last question is upon the first clause of section 7, and it is, whether, by the conference of "power" therein made, the cities of the first class may establish, or have already established, within them, such courts as are provided for in the act of March 27th. The legislature, treating section 10, article 11 of the constitution as not self-executing, in the act of March 24th, enumerated thirty-eight powers to be exercised by cities of the first class.

Sections 38, 45 and 53 of the act of March 27th enumerated the powers of cities of the second class, and similar sections fixed those of cities of the third and fourth classes. The powers thus enumerated are to be exercised or not at the discretion of the municipal legislature; and it is so with every power delegated to a corporation of this kind. Other provisions of the same act enjoin duties which are in no wise discretionary. And still other sections provide for certain offices which must be filled in the manner laid down. But a court is created in those cities and exists from the moment of incorporation, without the will, and even against the wish of the corporation, with its jurisdiction and procedure established and ready for action as soon as a judge is elected or appointed as the case may be. Here certainly is no exercise of a "power" by the corporation. On the contrary, here is a branch of the state's sovereignty pertaining to the judicial power, established by positive law without the interference or consent of the corporation. What broader distinction from a corporate "power" could there be than this?

Now, the city of Tacoma has attempted to set up a court, whether by charter or otherwise makes no difference, in so far as a construction of section 7 is concerned, choosing as its model the police courts of cities of the second class, and if this is the exercise of one of the powers conferred by the general language of the section, it must be agreed that the power is availed of under precisely the same terms as it is conferred by the act of March 27th upon the other cities; that is, the court came into existence, charter or no charter, the moment the city became incorporated. But which court? The act of March 27th provided for three different police courts, each differing from the others in many respects; how is it to be decided which of the three was intended to be impliedly erected in cities of the first class? Rather, should it not be forced to

hold that all these courts were there? Which renders it scarcely necessary to pursue the absurdity further.

But again, since by § 7 cities of the first class are to have all the "powers" of other cities, why may not the analogy be extended to powers other than those referring to courts? If a court like that of a city of the second class is by force of the act established in cities of the first class, why not all the officials prescribed for cities of the second class, with like powers and duties? Yet an inspection of the charter of Tacoma shows a very great variance in this respect, without any reason or authority if the term "powers" were to have the meaning contended for. Upon all the grounds urged, therefore, we are satisfied that the respondent's claims are not sustained.

The truth is that, whether by oversight, or mistake, or intention, we are not required to guess, the legislature in omitting to enact a general law for the incorporation and government of cities of the first class also failed to supply them with police courts, but left the administration of their criminal ordinances with the justices of the peace, where it had been for many years. It may well be that that body can easily be prevailed upon to supply the deficiency; but it is not within the province of this court to strain constructions to accomplish such an object without legislation.

It follows that we hold the police court of the city of Tacoma to have no legal existence, and that the petitioner is entitled to be released forthwith.

Anders, C. J., and Dunbar, Hoyt, and Scott, JJ., concur.