No. 22782.

IN RE INTERROGATORY OF THE GOVERNOR CONCERNING
ARTICLE XII, SECTION 13 OF THE CONSTITUTION
OF COLORADO.
(425 P.2d 31)

Decided March 20, 1967.

DUKE W. DUNBAR, Attorney General, FRANK E. HICKEY,

Deputy, JAMES W. CREAMER, JR., Assistant, for the Civil Service Commission of the State of Colorado, appearing as Amicus Curiae.

WINNER, BERGE, MARTIN & CAMFIELD, for interested parties, appearing as Amicus Curiae.

CHARLES GINSBERG, for employees of Juvenile Court and employees of Juvenile Hall, appearing as Amicus Curiae.

CREAMER & CREAMER, for State Civil Service Employees Association, appearing as Amicus Curiae.

MAX P. ZALL, City Attorney, BRIAN H. GORAL, Assistant, for the City and County of Denver, its Departments, Boards and Agencies, appearing as Amicus Curiae.

DAVID R. COSTELLO, JR., for employees of the District Court of the Second Judicial District, appearing as Amicus Curiae.

PHILIP HORNBEIN, JR., for Denver City Employees Local Union No. 158, appearing as Amicus Curiae.

THEODORE J. SOJA, for Colorado Trial Court Administrators' Association, appearing as Amicus Curiae.

JAMES R. CARRIGAN, JAMES G. MARTIN, appearing as Amicus Curiae.

TINSLEY, ALPERSTEIN, FRANTZ & PLAUT, for John L. Yurko, Carl Jacobson and Colorado Adult Probation Association, appearing as Amicus Curiae.

*En Banc.*

MR. JUSTICE MCWILLIAMS delivered the opinion of the Court.

PURSUANT to Article VI, section 3 of the Constitution of Colorado, the Honorable John A. Love, Governor of the State of Colorado, has requested this court to render its opinion upon the following interrogatory:

"1. Are employees of courts of record of the State of Colorado and the positions which they occupy, as authorized by statute, subject to the Civil Service provisions of Article. XII, Section 13 of the Constitution of Colorado"?

Our opinion is that the foregoing interrogatory should be answered in the negative. In other words, it is our view that employees of courts of record of the State of Colorado and the positions they occupy, as authorized by statute, are *NOT* subject to the Civil Service provisions of Article XII, section 13 of the Constitution of Colorado.

At the outset, it should be noted that the issue posed by the interrogatory is *not* whether employees of courts of record should be under a merit system, as opposed to the so-called spoils system. Rather, the more precise issue is whether such employees should be brought under a merit system which is in turn under the control of the State Civil Service Commission.

It is our considered view that the construction and interpretation given Article XII, section 13 of the Constitution of Colorado by all three branches of our state government has consistently been that the aforementioned provision in our Constitution does *not* apply to, or in any manner encompass, employees of courts of record. And this interpretation by the several branches of state government has not only been both contemporaneous and long standing in nature, but squares with the separation of powers doctrine. Let us first examine the judicial interpretation heretofore given this particular section of the Constitution.

Article XII, section 13 of our Constitution, which will hereinafter be referred to as the Civil Service Amendment, was adopted by the People of this state on No-

vember 5, 1918. Very shortly thereafter, in a series of original proceedings brought in this court, we held that a bailiff in the Denver District Court, the jury commissioner for the Denver District court and a bookkeeper and deputy clerk in the office of the clerk of the Denver County Court were not covered by the Civil Service Amendment. *People ex rel. Clifford v. Morley,* 67 Colo. 331, 184 Pac. 386; *People ex rel. Riordan v. Hersey,* 69 Colo. 492, 196 Pac. 180; and *People ex rel. Fisher v. Luxford,* 71 Colo. 442, 207 Pac. 477. Most certainly the result and rationale of those three cases strongly suggests that the answer to the interrogatory must be in the negative.

Continuing, then, the present State Civil Service Commission came into being in 1919, and for the next forty-eight years there was absolutely no effort, insofar as we have been advised, on the part of the Commission to bring employees of courts of record into the orbit of its operation. It was only on February 1, 1967 that the Commission, for the first time, decided that the Civil Service Amendment encompassed court employees, even though for the preceding forty-eight years the Commission had been of a contrary mind.

And in 1959, the General Assembly, no doubt recognizing the construction and interpretation given the Civil Service Amendment by both the judicial and executive branches of our government, declared that the "purpose" of the State Civil Service Act was "to provide a sound, comprehensive, and uniform *system of personnel administration for the classified service within the executive department.*" (Emphasis added.) C.R.S. 1963, 26-5-1.

It is against this backdrop, then, that those who would have us answer the interrogatory in the affirmative suggest that our prior decisions concerning the Civil Service Amendment were "wrong" and that it is high time we "correct" our earlier mistakes. We have, of course, examined carefully our earlier decisions relating to the matter, namely the *Morley, Hersey* and

*Luxford* cases. In our opinion, the result obtained in each of those cases is "right" and not "wrong." But even if the results be a so-called "wrong" decision, we would not be justified in overruling those cases unless there be compelling reasons for so doing. Stare decisis should be the rule and not the exception. And in the instant matter, we find no such compelling reason as would cause us to part company with these earlier decisions bearing on the issue now before us. So, for all these reasons, we now adhere to our solemn and considered pronouncements in the *Morley, Hersey* and *Luxford* cases.

In our view it would be somewhat presumptuous for us to determine that we are now better equipped, or in a *better position,* than were our predecessors when they in 1919, for example, determined the *Morley* matter. Indeed, in this particular the presumption is that our court, as constituted in 1919, was in a better position than would be this court as it now exists in 1967, to ascertain the true intent and purpose of those who placed the Civil Service Amendment in our State Constitution. And such intent and purpose, of course, becomes important where there exists, as it is contended here, a supposed ambiguity in the constitutional provision under consideration.

In 16 Am. Jur. 2d 264 appears the following:

"The presumption is that those who were contemporaries of the makers of the constitution have claims to the deference of later tribunals because they had the best opportunities of informing themselves of the understanding of the framers and of the sense put upon the constitution by the people when it was adopted."

*Ogden v. Saunders,* 25 U.S. (12 Wheat.) 212, 6 L.Ed 606, is cited in support of the foregoing quotation. In that case Mr. Justice Johnson said:

"When considering the first question in this cause, I took occasion to remark on the evidence of contemporanous exposition, deducible from well known facts.

Every candid mind will admit, that this is very different from contending that the frequent repetition of a wrong will create a right. *It proceeds from the presumption that the contemporaries of the constitution have claims to our deference,* on the question of right, *because they had the best opportunities of informing themselves of the understanding of the framers of the constitution, and the sense put upon it by the people, when it was adopted by them. . . ."* (Emphasis added.)

Application of Mr. Justice Johnson's pronouncement to the instant matter would mean that our court, as it was constituted in 1919, was presumptively in a better position than is the court, as presently constituted, of informing itself as to the "understanding" of the framers of the Civil Service Amendment and of the "sense put upon it by the people when it was adopted by them." That court being a "contemporary" of the Civil Service Amendment, has a claim to our deference. See in this same general connection, *McPherson v. Blacker*, 92 Mich. 377, 52 N.W. 469.

*Schwartz v. People*, 46 Colo. 239, 104 Pac. 92 is also deemed to be of value. In that case, we said:

"Beside, for thirty-two years or more, in each branch of government, executive, legislative and judicial, the sovereign right of the people to deal with this subject at will, through their legislative representatives, without doubt or question, even to the extent of prohibition, where deemed expedient, has been recognized and affirmatively declared. When suddenly, as if by some overwhelming necessity, for the first time in this long period, it is detected by the acute and vigilant legal talent, that the right was assigned away by the organic law of the state, through the indirect, and ofttimes unsatisfactory and doubtful route of implication. Not being impressed with the value of the revelation, we are unable to accord it the importance claimed, for neither in fact nor law does it seem possessed of those elements of genuineness which should attach to so extraordinary

a discovery. *While it may be true contemporaneous legislative construction, and affirmative judicial ascertainment, when the latter is had, without the exact point decided being before the court, may not be conclusive, yet extending as they both do here over a generation, they must be persuasive, as showing the attitude of our entire people, official, professional and lay, touching the exact meaning of the provision now under consideration.* The ordinary and common sense one seems to have been, during the whole life of the state, and until now, universally adopted." (Emphasis added.)

In the instant matter, we have not just one, but several "affirmative judicial ascertainments," and, unlike the *Schwartz* case, each of these judicial ascertainments is *on*, and not without, the very point raised by the Governor's interrogatory. And as already stated, in our view these earlier affirmative "judicial ascertainments" should be followed, and not rejected.

■ Accordingly, it is our opinion that the answer to the interrogatory submitted to us by His Excellency, the Governor, is in the negative.

MR. CHIEF JUSTICE MOORE not participating.