436

No. 23650.

COLORADO STATE CIVIL SERVICE EMPLOYEES ASSOCIATION; HARRY C. REESE; V. CRAIG JOHNSON; AND C. W. PETERSON *v.* JOHN LOVE, AS GOVERNOR OF THE STATE OF COLORADO; THE CIVIL SERVICE COMMISSION OF THE STATE OF COLORADO; CY BURRESS, JR., RICHARD Y. BATTERTON, AND WILLIAM R. WELSH, AS MEMBERS OF AND BEING AND CONSTITUTING THE CIVIL SERVICE COMMISSION OF THE STATE OF COLORADO; JOHN HECKERS, INDIVIDUALLY AND ACTING AS EXECUTIVE DIRECTOR OF THE DEPARTMENT OF REVENUE OF THE STATE OF COLORADO; DAVID A. HAMIL, INDIVIDUALLY AND ACTING AS EXECUTIVE DIRECTOR OF THE DEPARTMENT OF INSTITUTIONS OF THE STATE OF COLORADO; AND E. W. SANDBERG, INDIVIDUALLY AND ACTING AS EXECUTIVE DIRECTOR OF THE DEPARTMENT OF ADMINISTRATION OF THE STATE OF COLORADO.

(448 P.2d 624)

Decided December 16, 1968.

440

CREAMER & CREAMER, GEORGE CREAMER, for petitioners.

DUKE W. DUNBAR, Attorney General, FRANK E. HICKEY, Deputy, JOHN E. BUSH, Assistant, PAUL D. RUBNER, Assistant, for respondents.

*En Banc.*

MR. JUSTICE HODGES delivered the opinion of the Court.

THIS is an original proceeding, under R.C.P. Colo. 106 and 116, involving a matter of first impression before this court. The petitioners challenge the constitutionality of certain provisions of the Administrative Reorganization Act of 1968 on the ground that they contravene the civil service amendment, Colo. Const. art. XII, § 13.

Determination of this issue requires construction *in pari materia* of these constitutional and statutory provisions:

Colo. Const. art. XII, § 13 is the civil service amendment, which in pertinent part provides:

"The classified civil service of the state shall comprise all appointive public officers and employees and the places which they hold, except the following: . . . *the Governor's private secretary and three confidential employees of his office . . . one deputy of each elective officer . . .*" (Emphasis added.)

The final clause reads:

"This section shall be self-executing."

Colo. Const. art. IV, § 22 adopted in 1966, is the state government reorganization amendment, which in part provides:

"All executive and administrative offices, agencies, and instrumentalities of the executive department of state government and their respective functions, powers, duties, except for the office of governor and lieutenant governor, shall be allocated by law among and within not more than twenty departments by no later than June 30, 1968 . . ."

The final clause reads:

"Nothing in this section shall supersede the provisions of section 13, article XII, of this constitution."

The Administrative Reorganization Act of 1968, Colo. Sess. Laws 1968, ch. 53, which will be referred to herein as the 1968 Act, "allocated by law" the executive and administrative functions of state government among 17

departments. In this statutory reorganization, the Legislature excluded the following officials from civil service: The executive director of the Department of Administration, designated as "deputy" to the Governor (Sec. 16 of the 1968 Act);

The executive directors of three other departments, Revenue, Institutions, and Local Affairs, each designated as a "confidential employee of the Governor" (Secs. 17, 18, and 25 of the 1968 Act); and,

The Coordinator of State Planning and the Coordinator of Highway Safety, each designated as "a member of the staff of the Governor." (Secs. 176, 9(2), and 177 of the 1968 Act.)

The four executive directors thus exempted are appointed by the Governor, with consent of the Senate, and serve at the pleasure of the Governor. The two coordinators also serve at the Governor's pleasure, but their gubernatorial appointment is not subject to Senate confirmation. The gravamen of petitioners' complaint is the exclusion of these six officials from civil service.

This proceeding involves a question of great importance to the people of the State of Colorado. The people, by adopting Section 22 as an amendment to Article IV of the state constitution, declared their collective will to restructure the executive branch of our state government. The Legislature, obeying the constitutional mandate, enacted the 1968 Act. The amendment and the 1968 Act share a laudable objective: improved efficiency in the performance of governmental functions, which have increased greatly in number and complexity since our constitution was adopted in 1876. However, inherent in our form of government is the principle that the end alone cannot serve as justification for the means. It is not the judicial function to decide whether the legislative exclusion of six executive officials from civil service is administratively desirable. Our sole function is to determine whether the designated exemptions subvert the governing constitutional provisions.

■ Before considering the substantial constitutional issue submitted here, we can readily resolve the parties' conflicting contentions concerning petitioners' capacity to maintain this original proceeding. Petitioners, as taxpayers, challenge statutory provisions which involve reorganization of our state government, and the rule enunciated in *Howard v. Boulder*, 132 Colo. 401, 404, 290 P.2d 237, 238, is therefore apt and governing:

". . . we can conceive of no greater interest a taxpayer can have than his interest in the form of government under which he is required to live, or in any proposed change thereof."

The rights involved extend beyond self-interest of individual litigants and are of "great public concern." Petitioners state a justiciable controversy, because they claim violation of the Civil Service Amendment, which is fully self-executing. *Crawford v. Denver*, 156 Colo. 292, 398 P.2d 627, *People v. Hamrock*, 74 Colo. 411, 222 P. 391, *People v. Bradley*, 66 Colo. 186, 179 P. 871. A precept of constitutional law is that a self-executing constitutional provision ipso facto affords the means of protecting the right given and of enforcing the duty imposed. 1 T. Cooley, Constitutional Limitations 167 (8th ed. 1927). For the reasons stated, we hold that petitioners are proper parties and that the petition states a cause appropriate for exercise of this court's original jurisdiction under R.C.P. Colo. 116.

I. The Civil Service Amendment, Section 13 of Article XII, Colorado Constitution.

■ The meaning of the Civil Service Amendment governs the validity of the provisions of the 1968 Act which exempts six officers of the state from civil service. Our first inquiry is: What is the meaning of Colo. const. art. XII, § 13? We hold that rules of construction are not applicable, because the language of the amendment leaves no reasonable doubt as to its meaning. The

applicable rule is that stated in *People ex rel. Seeley v. May,* 9 Colo. 80, 85, 10 P. 641, 643:

"We place at the beginning of the inquiry . . . what we regard as the leading and controlling rule which is to guide us in this case.

'Whether we are considering an agreement between parties, a statute or a constitution, with a view to its interpretation, the thing which we are to seek is *the thought which it expresses.* To ascertain this the first resort in all cases is to the natural signification of the words employed in the order of grammatical arrangement in which the framers of the instrument have placed them. If, thus regarded, the words embody a definite meaning which involves no absurdity and no contradiction between different parts of the same writing, then that meaning, apparent on the face of the instrument, is the one which alone we are at liberty to say was intended to be conveyed. *In such a case there is no room for construction.* That which the words declare is the meaning of the instrument, and neither courts nor legislatures have a right to add to or take away from that meaning.' Cooley's Constitutional Limitations, 69, 70." (Italicized by court.)

The language used in the Civil Service Amendment is plain, its meaning clear, and no absurdity is involved. Hence, it must be declared and enforced as written: all officers of the state must be under civil service except for certain exemptions which are described in specific terms. In such a case there is nothing to interpret. *People v. Hinderlider,* 98 Colo. 505, 57 P.2d 894. The only exemptions relevant here are: "one deputy of each elective officer" and "three confidential employees of his (the Governor's) office." These words and phrases have a plain and ordinary signification in the English language, and we therefore should not resort to forced and strained definitions. *Lidke v. Indus. Comm.,* 159 Colo. 580, 413 P.2d 200, *Frost v. Pfeiffer,*

26 Colo. 338, 58 P. 147, *In Re Senate Resolution No. 2,* 94 Colo. 101, 113, 31 P.2d 325.

The specificity with which the exemptions from civil service are stated in ordinary words of plain meaning precludes extension of exemption by subtle definition.

This view of the Civil Service Amendment is corroborated by the extrinsic facts of its history and previous judicial interpretation. In the first case involving this Amendment, decided shortly after its adoption, the court reviewed the legislative history of the State's merit system and took judicial notice of its past dependency upon legislative appropriations, which had varied according to whether a given legislature was favorable or hostile to civil service. *People v. Bradley,* 66 Colo. 186, 179 P. 871. The court declared that "the constitutional amendment was initiated accordingly for the very purpose of avoiding the destruction or emasculation" of the civil service in the future at the discretion of the legislature. The legislature had periodically refused appropriations to support the Civil Service Commission, then passed an act in 1912 to compel appropriations, and thereafter, repealed this act in 1915. It is obvious that the public motivation for adoption of this Amendment in 1918 was to protect and promote a merit system of employment for officers and employees of the state. The People of the State of Colorado having thus found it necessary to amend the constitution in order to safeguard civil service, the judicial branch of the government is obligated to effectuate their intent to the fullest possible extent.

II. The State Reorganization Amendment, Section 22 of Article IV, Colorado Constitution.

This amendment was adopted on November 8, 1966 by the electorate. It provides for a sweeping reorganization of the executive branch of state government and contains a mandate to the legislature to effect

this change by statute prior to June 30, 1968. The importance of the amendment to the instant proceeding lies in its final clause, which reads:

"Nothing in this section shall supersede the provisions of section 13, Article XII of this constitution."

This clear declaration that the proposed reorganization would not infringe upon the Civil Service Amendment is an integral part of Section 22 and must be given full effect. We have no right to assume that the people would have favored adoption if this clause had been omitted from the Amendment as submitted for their vote. The People voted for reorganization of the executive branch of their state government to be accomplished without affecting the civil service system which they had previously engrafted on our constitution.

In interpreting a constitutional amendment, which has been adopted by popular vote, the court must presume that the words were used in their ordinary meaning and that the people intended what they have said. This is a fundamental principle of American constitutional law. *Gibbons v. Ogden,* 22 U.S. (9 Wheat.) 1, 6 L.Ed. 23. If we put a forced construction on the language of the Amendment by assigning some subtle meaning to the clause which plainly says that reorganization *shall not* affect the Civil Service Amendment, then we have thwarted the expressed will of the people and left them without recourse. An amendment to the constitution is the solemn final exercise of the sovereignty which belongs to the People of the State of Colorado. Neither executive order, nor legislative enactment, nor judicial decision can be permitted to render futile this expressed will of the People.

III. Statutory Exemptions from Civil Service in the Administrative Reorganization Act of 1968.

The validity of the exclusions from civil service which are designated in the 1968 Act must be determined in the light of the applicable constitutional

provisions — the Civil Service Amendment and the State Reorganization Amendment. State constitutions, unlike the federal constitution, are not *grants* of power to the legislative branch of government. Because state legislatures have plenary power for all purposes of civil government, state constitutions are *limitations* upon that power. *Prudential Insurance Co. v. Hummer,* 36 Colo. 208, 84 P. 61; *Alexander v. People,* 7 Colo. 155, 2 P. 894. We therefore ask, not if the Act's civil service exclusions are authorized, but if they are prohibited.

The Civil Service Amendment specifically defines the exemptions from civil service; Section 22 of the Reorganization Amendment forbids any encroachment thereon; and therefore, no statute may lawfully contravene the limitations which are imposed by the exemptions. The constitutional exemptions and the Act's exclusions from civil service are stated in equally plain words, and hence, rules of construction are inapplicable. *Lidke v. Indus. Comm.,* 159 Colo. 580, 413 P.2d 200; *Montrose v. Niles,* 124 Colo. 535, 238 P.2d 875; *Jones v. Board of Adjustment,* 119 Colo. 420, 204 P.2d 560; *People v. Elliff,* 74 Colo. 81, 219 P. 224. The inquiry here is purely one of the ordinary meaning of the explicit language used in the Civil Service Amendment and in the exclusion provisions of the 1968 Act.

*The Deputy of the Governor*

Section 16(1) of the 1968 Act declares that the executive director of the department of administration shall be "the deputy to the Governor, appointed by the Governor, with the consent of the Senate, pursuant to provisions of section 13 of article XII of the state constitution, and who shall serve at the pleasure of the governor." The Civil Service Amendment exempts from civil service "one deputy of each elective officer."

The Governor is one of the six elective officers enumerated in Sections 1 and 3 of Article IV, Colorado constitution. The plain meaning of the words used in the Civil Service Amendment and in the 1968 Act

is that the Governor, as an elective officer, may appoint a deputy, who is not subject to civil service. We here draw attention to the posture of this case as presented here, wherein the Governor is named as respondent and seeks to uphold the validity of the subject statutory provisions. The functions to be performed within the department of administration are intrinsically related to the administrative and executive duties of the chief executive. Therefore, there is no constitutional obstruction which prevents the deputy of the Governor from serving as executive director of the department of administration.

On this basis, Section 16(1) of the 1968 Act does not contravene the Civil Service Amendment.

*The "confidential employees" of the Governor*

The 1968 Act designates, as "a confidential employee of the Governor under the provisions of Section 13 of Article XII of the state constitution," the executive director of each of the following departments of state government: Revenue [Sec. 17(1)]; Institutions [Sec. 18(1)]; and, Local Affairs [Sec. 25(1)]. The pertinent exclusionary clause in the Civil Service Amendment is ". . . the Governor's private secretary and three confidential employees of his office . . .".

The *Department of Revenue* is charged by statute with the enforcement and collection of all taxes, imposts, fees and licenses under all taxing and licensing laws of the State of Colorado. In carrying out these functions, the Department is authorized to foreclose liens and to distrain upon the property of this State's citizens. In recognition of the extensive duties imposed upon the Department of Revenue, the Act provides that it shall consist of at least four divisions, with the executive director empowered to create additional divisions. (Sec. 17(4) of the 1968 Act.)

The *Department of Institutions* is charged by statute with the supervision and control of fourteen state institutions, whose gamut runs from institutions for special

education and for the mentally ill to all penal and reform institutions in the State of Colorado. (Sec. 18(3) and (4) of the 1968 Act.)

The *Department of Local Affairs* is charged by statute with a variety of governmental functions, best described by the five divisions which the Act assigns to it: Local Government, Property Taxation, Commerce and Development, the Colorado Bureau of Investigation, and the Colorado Law Enforcement Training Academy. (Sec. 25 of the 1968 Act.)

The executive directors of each of these departments, Revenue, Institutions, and Local Affairs, have been categorized by the legislature as "confidential employees of the Governor." But the statutory powers and duties of the departments which they head are the antithesis of confidential: they are public functions performed by public officials which directly affect all of the people of the State of Colorado. To accept a definition of the executive director for any of these three departments as a "confidential employee" would strain and force the clear meaning of plain language beyond credulity. These state executives must answer to the people, and the performance of their duties neither is, nor should be, cloaked with confidentiality.

Moreover, the Civil Service Amendment specifies that the Governor's three "confidential employees" shall be employees "of his office." Sections 17, 18, and 25 of the 1968 Act use only the term "confidential employee" in so classifying the three executive directors, but delete the qualifying clause "of his office." Each clause and sentence of either a constitution or statute must be presumed to have purpose and use, which neither the courts nor the legislature may ignore. But the fatal defect lies not in the statutory omission of the clause "of his office," but rather in its inapplicability to the executive directors of the three Departments. The ordinary meaning of "office" was succinctly given in *Jones v. Board of Adjustment*, 119 Colo. 420,

204 P.2d 560 by the statement: "The word 'office' is synonymous with 'place of business'." Obviously, the executive directors of the departments of Revenue, Institutions, and Local Affairs, with their substantial responsibilities and extensive staff working in various divisions under the directors' supervision, do not have their "place of business" in the office of the Governor.

The phrase "confidential employees of his office" has, in our view, a plain and obvious meaning, which defies any attempt to define away the import of these words. This phrase connotes only certain personal employees of the Governor whose functions are confined to his office and whose duties are concerned with the administration thereof.

We are not unmindful of the fact that the legislature in 1919, shortly after the adoption of the Civil Service Amendment, created the office of the state budget and efficiency commissioner, and declared the commissioner to be a "confidential employee" of the Governor. (Colo. Sess. Laws 1919, ch. 12, § 4.) Respondents urge that this contemporary construction is entitled to great weight. However, the office thus created may be plausibly argued to fall within the constitutional exemption, whereas, the three executive directors in the instant proceeding clearly do not. But this distinction is not controlling here. The governing principle, long adhered to in this state, is that legislative construction cannot abrogate the plain meaning of the constitution. In *People ex rel. Seeley v. May,* 9 Colo. 80, 10 P. 641, we quote with approval the following:

"Contemporary construction can never abrogate the text; it can never fritter away its obvious sense; it can never narrow down its true limitations; it can never enlarge its natural boundaries. Story on the Const. sec. 407."

Respondents point out that, in addition to the 1919 statute, the legislature has designated various state offi-

cers as "confidential employees" of the Governor in 1933, 1941, and 1951 enactments, and they rely upon the rule that long-standing construction is to be accorded great weight. But we repeat, no rule of construction can change or distort clear constitutional language. The reason for circumscribing the efficacy of a long-standing construction is compellingly stated in the case of *In Re Senate Resolution No. 2,* 94 Colo. 101, 116, 31 P.2d 325, 331:

". . . the declarations of the executive and legislative departments of the state government, while probably persuasive, are not binding here. If they were, the Constitution would cease to have even the force of a statute. If the people's 'Thou shalt not,' can be brushed aside by the simple ipse dixit of their servants thus bound, the mandate is impotent."

We are, therefore, obliged to declare Sections 17(1), 18(1), and 25(1) of the Administrative Reorganization Act of 1968 to be unconstitutional insofar as the executive directors therein designated are excluded from civil service.

The conclusion which we have reached is consistent with the prior decisions of this court. In the first case to consider the question, the court held that the classified civil service of the state, within the context of the Civil Service Amendment, embraces *officers and employees of the state only. People ex rel. v. Higgins,* 67 Colo. 441, 184 P. 365. Although legislative officers are constitutional officers, they are not state officers. *In re Speakership,* 15 Colo. 520, 25 P. 707, 11 L.R.A. 241. And in a series of cases, we have uniformly held that officers of the court are not state officers, and hence, are beyond the purview of the Civil Service Amendment. *In re Interrogatory of Governor,* 162 Colo. 188, 425 P.2d 31; *People ex rel. Fisher v. Luxford,* 71 Colo. 442, 207 P. 477; *People ex rel. Riordan v. Hersey,* 69 Colo. 492, 196 P. 180, 14 A.L.R. 631; *People ex rel. Clifford v. Morley,* 67 Colo. 331, 184 P. 386. Thus, judicial

precedent confirms that the Civil Service Amendment applies only to officers and employees of the executive branch of state government. The executive directors, whose excluded status is here questioned, indisputably serve in the executive branch of government. The decisions defining and distinguishing public "officers" are not only consistent with each other and with the conclusion here reached, but more importantly, they are consonant with the constitutional structure and orderly administration of our state government.

### Members of the Staff of the Governor

 The 1968 Act provides for a Coordinator of State Planning and for a Coordinator of Highway Safety, each of whom shall be "a member of the staff of the Governor" — and both of whom are excluded from civil service. (Sections 176, 9(2), and 177.) These two officers exceed numerically the constitutional limitation upon employees of the Governor who may be exempted from civil service. But the respondents contend with respect to these coordinators that the legislature lawfully created a class of confidential servants who are inherently exempt from the ambit of civil service.

In support of their contention, respondents rely upon *People v. Field,* 66 Colo. 367, 181 P. 526 and *Board of Education v. Spurlin,* 141 Colo. 508, 349 P.2d 357. In both cases, the court held certain officers were not subject to civil service, but in both cases the holding was based upon express constitutional provisions. In the *Field* case, the court ruled that Section 9 of Article IX, a special provision applicable to the land board only, controlled over Section 13 of Article XII, applying to all state officers generally, and hence, a land board member is not subject to the provisions of the Civil Service Amendment. In the *Spurlin* case, the State Department of Education was held to be an educational institution and hence, the heads of the various departments of the State Board of Education were "officers ... in educational institutions not reformatory or charitable

in character ..." within the meaning of this language in the Civil Service Amendment.

However, in the *Field* case, although tangential to its decision, the court quoted the following textual statement:

"Again we must take cognizance of the purpose, nature and character of civil service laws involving the merit system in government. Their scope is generally limited by statutes so as to exclude from their operation certain classes of public officers and employees; such as those made by law subject to confirmation by legislative bodies, heads of departments, professional experts, positions of a confidential nature, and those involving the exercise of judgment and discretion in important matters, as well as judges, their clerks and confidential employees." 5 R.C.L. 615.

This same paragraph was again quoted in the *Spurlin* case, *supra*, and by respondents to buttress their position that "members of the staff of the Governor" designated by the Act are a class of state officers independent of the classified civil service. To avoid future misapprehension, we point out that Ruling Case Law cites only four cases in support of the above quoted text. Three of the cases involve the interpretation of statutes only. *Attorney-General v. Tillinghast*, 203 Mass. 539, 89 N.E. 1058, 17 Ann. Cas. 449, *People v. Kipley*, 171 Ill. 44, 49 N.E. 229, 41 L.R.A. 775. The fourth case, *Chittenden v. Wurster*, 152 N.Y. 345, 46 N.E. 857, 37 L.R.A. 809, involves a constitutional provision so different from the Colorado Civil Service Amendment as not to be comparable.

In clarification, we hold that there is no constitutional justification for the legislature to create any class of state officers and employees within the executive branch which is independent of the classified civil service system of the state. A contrary view would strike at the basic philosophy undergirding the Civil Service Amendment, for as an earlier court presciently warned

in *People ex rel. Fulton v. O'Ryan*, 71 Colo. 69, 70, 204 P. 86, 87:

". . . for it is evident that if the legislature may merely change title of an office and attach the duties and salary of the old name to the new one, the civil service amendment is a nullity. (citing numerous authorities) To prevent such things was the purpose of the amendment. *People ex rel. v. Bradley*, 66 Colo. 186, 190, 179 P. 871."

*Summary*

We hereby make the following declarations with respect to the provisions of the Administrative Reorganization Act of 1968 which are questioned in this proceeding:

1. *Section 16(1)*, designating and excluding from civil service the executive director of the Department of Administration as the Governor's *"deputy,"* complies with Section 13 of Article XII of the constitution.

2. *Sections 17(1), 18(1) and 25(1)* contravene Section 13 of Article XII of the constitution insofar as they exclude from civil service as "confidential employees" the executive directors of the Departments of Revenue, Institutions, and Local Affairs.

3. *Sections 176 and 177* contravene Section 13 of Article XII of the constitution insofar as they purport to exclude from civil service as "a member of the staff of the office of the Governor" the Coordinator of State Planning and the Coordinator of Highway Safety.

The exclusions from civil service which we thus declare to be unconstitutional are severable clauses, and do not impair or affect the remainder of the 1968 Act, nor of the balance of the sections thereof in which such exclusions are contained.

Neither the motive of the legislature, nor any hardship imposed by our judicial declaration can receive consideration where the constitution of our state has imposed a clear limitation upon, and prescribed a specific method for, the selection of state officers of our executive branch of government.

*Order*

To assure maintenance of the orderly processes of governmental administration, we hereby order the respondent Civil Service Commission of the State of Colorado to initiate forthwith its selection procedures as authorized by law for the appointment of the executive directors of the departments of Revenue, Institutions, and Local Affairs, and for the appointment of the Coordinator of State Planning and the Coordinator of Highway Safety.

The incumbents of these five executive offices shall remain as provisional appointments pending appointments by the Governor from an approved civil service list.

To the extent indicated, the rule is made absolute.