[No. 1357-1.  Division One—Panel 2.  August 27, 1973.]

GAETANO MASSIE et al., *Respondents*, v. MERLIN C. BROWN et al., *Appellants*.

*A. L. Newbould, Corporation Counsel*, for appellants.

*Wettrick, Toulouse, Lirhus & Hove, Ralph C. Hove* and *John Spiller*, for respondents.

WILLIAMS, J.—This is an appeal from a judgment of the superior court permanently enjoining the City of Seattle and its Civil Service Commission from extending civil service status to the position of warrant server with the Seattle Traffic Violations Bureau.

Gaetano Massie, Dave B. Grimsrud, Emil H. Deskins and James Paul McKay, the respondents, were hired as warrant servers for the Traffic Violations Bureau of the Municipal Court of the City of Seattle. After they had been so employed for some time, the Civil Service Commission of the

city placed the position of warrant server in the civil service system and, were it not for the institution of this action, the four respondents would have lost their jobs. The question is whether the Civil Service Commission has authority to place the position of warrant server within the civil service system. We hold that the commission does not have that authority and, with the exception later noted, affirm the judgment of the trial court.

The position of warrant server for the Traffic Violations Bureau was created by city ordinance. The Traffic Violations Bureau is a part of the Seattle Municipal Court (RCW 35.20.131) which was established by the state legislature (RCW 35.20) pursuant to the authority of the Constitution of the State of Washington. Article 4, section 1 of our constitution provides in part that "The judicial power of the state shall be vested in · . . . such inferior courts as the legislature may provide." The city and the commission, appellants, concede that the position of warrant server is within the judicial department of the city and that respondents are employees of the court.

The Seattle Civil Service Commission was created by the charter of that city and has the responsibility of personnel management—the hiring, promoting, disciplining and firing of those city employees who hold positions within the civil service system. The commission has no responsibility for the operation of any department of the city government except its own.

The placement in the commission of control of the incidence of employment of personnel directly connected with the operation of the municipal court is improper as an invasion of the independence of the judiciary. The doctrine of separation of powers applies. As is said in *Mann v. County of Maricopa*, 104 Ariz. 561, 564, 456 P.2d 931 (1969) quoting from *Smith v. Miller*, 153 Colo. 35, 384 P.2d 738 (1963):

> The judiciary has its exclusive powers and functions, to-wit: it has judgment and the power to enforce its judgments and orders. In their responsibilities and

duties, the courts must have complete independence. It is not only exiomatic (sic), it is the genius of our government that the courts must be independent, unfettered, and free from directives, influence, or interference from any extraneous source. It is abhorrent to the principles of our legal system and to our form of government that courts, being a coordinate department of government, should be compelled to depend upon the vagaries of an extrinsic will. Such would interfere with the operation of the courts, impinge upon their power and thwart the effective administration of justice. These principles, concepts, and doctrines are so thoroughly embedded in our legal system that they have become bone and sinew of our state and national polity.

The executive, legislative, and judicial branches of government of our state have recognized and respected the distribution of powers as provided by the constitution. The Governor, for example, recognized that the judiciary is a separate and independent branch of the government when he vetoed legislation which placed in the county commissioners the appointment of clerks of the district courts. Senate Journal, Thirty-seventh Legislature (1961) at 1211. The legislature has exempted all employees of the state judiciary from the state civil service system, RCW 41.06.070. In turn, the Supreme Court has refused to interfere with executive (*State v. International Typo. Union,* 57 Wn.2d 151, 356 P.2d 6 (1960); *State v. Fair,* 35 Wash. 127, 76 P. 731 (1904)) and legislative (*Hoppe v. State,* 78 Wn.2d 164, 469 P.2d 909 (1970); *Seattle v. Hill,* 72 Wn.2d 786, 435 P.2d 692 (1967)) action. For application of the doctrine in other states *see Mann v. County of Maricopa, supra; Powers v. Isley,* 66 Ariz. 94, 183 P.2d 880 (1947); *In re Interrogatory of Governor,* 162 Colo. 188, 425 P.2d 31 (1967); *People ex rel. Riordan v. Hersey,* 69 Colo. 492, 196 P. 180, 14 A.L.R. 631 (1921); *Norman v. Van Elsberg,* 262 Ore. 286, 497 P.2d 204 (1972).

We note that, in some instances, the legislature has authorized civil service status for court employees. RCW 35.20.131 states that the director of the Traffic Violations

Bureau shall be subject to city civil service laws, and that employees of the bureau who are under civil service on the effective date of the act shall be continued in such employment and classification. RCW 3.30.090, which authorizes a violations bureau for a justice court, provides that the employees thereof "shall be city employees under any applicable municipal civil service system." RCW 3.46.140, which provides for a municipal department of a justice court, has a similar provision. The validity of these statutes has not been adjudicated, and we express no opinion as to them.

It is argued that the city charter requires the inclusion of the warrant servers in the civil service system. The Seattle Municipal Court is not established by the charter, but by the state legislature, which has exclusive power to do so. *In re Cloherty*, 2 Wash. 137, 27 P. 1064 (1891).

One further matter remains: The judgment purported to adjudicate the civil service status of all officials and employees of the judicial department, rather than apply only to the four respondents who were before the court. As has been seen in this opinion, the principles which apply to the respondents are also applicable to employees of the judiciary, generally. However, we must confine ourselves to the problem before the court, which is the personal complaint of the four gentlemen. The trial court's order will therefore be modified so as to apply to the respondents, only. As so modified, the judgment is affirmed.

CALLOW, J., concurs.

CALLOW, J. (concurring)—I concur in the result reached and in the principles enunciated in the opinion of Judge Williams. I also agree with the conclusion of Judge Horowitz that warrant servers are employees of the Seattle Municipal Court which is constituted in accordance with the provisions of state law and does not owe its genesis to the Seattle City Charter.

The governing state statutes contemplated that the position of warrant server would be subject to judicial appointment and serve subject to the discretion and direc-

tion of the court. A warrant server then, as a functionary of the court, was not subject to any criterion of acceptability for civil service as imposed by the Seattle Civil Service Commission. In any event, however, a warrant server, as an employee of the court, could not be subject to the authority of the executive branch.

The statutory pattern recognized these concepts which are complimentary rather than diverse. Both approaches to the result are in reality, I believe, but one, whether the authority of a branch of government to manage its own affairs is recognized at the outset by the legislative branch or delineated by the judicial branch when friction occurs. Both concepts, explicitly and tacitly, express the principle that the power and authority of one branch of government to carry out its function without interference from another is essential to the strength of the whole.

HOROWITZ, J. (concurring specially)—Two questions arise on this appeal: (1) whether a warrant server in the Traffic Violations Bureau of the Municipal Court of the City of Seattle is subject to Seattle's Home Rule Charter civil service system, and (2) if so subject, whether the extension of civil service status to a warrant server violates the doctrine of separation of powers and is therefore invalid. The trial court answered the first question in the negative, thereby making it unnecessary to answer the second question. I agree with the trial court and would affirm as to the plaintiffs.

Defendants except to a finding and two conclusions. They are generally to the effect that a warrant server in the Traffic Violations Bureau of the Municipal Court of the City of Seattle is not subject to Seattle's civil service system constituted by the Seattle City Charter, particularly in light of RCW 35.20.100, .105, .131, and Seattle City Ordinance No. 94893 set out in the findings of fact.

The disposition of the defendants' attack upon the finding and conclusions assigned as error requires a short statement of the background law. The Seattle City Charter was

adopted pursuant to state law on March 12, 1946. *See* RCW 35.22. The adoption of the charter did not, however, confer upon the city the power to create police courts. *In re Cloherty,* 2 Wash. 137, 27 P. 1064 (1891). The power to create police courts and, by like reasoning, traffic courts, remained with the state except as its statutes expressly permitted city laws to control. Accordingly, as formerly, the state exercised its legislative power from time to time to regulate the structure and functions of the municipal courts and the appointment of judicial personnel in the municipal court system. Laws of 1899, ch. 85; Laws of 1941, ch. 85; Laws of 1943, ch. 105; Laws of 1955, ch. 290; Laws of 1965, ch. 7; Laws of 1967, ch. 241; Laws of 1969, 1st Ex. Sess., ch. 147; Laws of 1972, 1st Ex. Sess., ch. 32.

The 1943, 1955, 1965 and 1969 session laws dealt with the civil service status of the municipal court judicial personnel. Their total ultimate effect was to place under civil service the municipal court's chief clerk, additional clerks, clerical assistants, and the director of the Traffic Violations Bureau. However, probation officers, the director of the probation service, bailiffs, the court administrator, and judges pro tem were not placed under civil service, state or municipal. RCW 35.20.105, .131, .200, .210, .230. On the subject of bailiffs, Laws of 1969, 1st Ex. Sess., ch. 147, § 6 (RCW 35.20.230), continuing a similar provision in Laws of 1955, ch. 290, § 23, provides:

> The judges of the municipal court shall also appoint a bailiff for the court, together with such number of . . . additional bailiffs as may be authorized by the legislative body of the city.

The statute provided that the services of the bailiffs authorized by the legislative body of the city should be paid by the city treasurer.

Neither the statutes cited, nor any other state statute, expressly refers to warrant servers as such. Such warrant servers, however, in serving court process and writs, perform the functions of a sheriff or constable at common law. 62 Am. Jur. 2d *Process* §§ 31, 32 (1972); 47 Am. Jur. *Sheriffs,*

*Police, and Constables* § 26 (1942). *See Nicholson v. State,* 38 Fla. 99, 20 So. 818 (1896). *Compare Marsh v. Hawkins,* 7 Ariz. App. 226, 437 P.2d 978, 31 A.L.R.3d 1383 (1968).

Law dictionaries define the word "bailiff" to include a sheriff's officer or deputy. *See* 1 Bouvier's Law Dictionary 312-13 (3d rev. 1914); Black's Law Dictionary 178-79 (4th ed. 1951). W. Shumaker and G. Longsdorf, Cyclopedic Law Dictionary 97 (3d ed. 1940), includes in the definition of bailiff "sheriff's bailiffs, sheriff's officers to execute writs; . . ." *See also* 1 *Oxford English Dictionary, A New English Dictionary on Historical Principles* 626 (1933); 1 R. Wooddeson, *A Systematical View of the Laws of England* 253 (1792). RCW 35.20.230 does not define the term "bailiffs" or describe the particular duties performable by bailiffs. Nevertheless, because a bailiff may perform the function of serving warrants, as well as other services in attending upon the court, we believe it proper to treat warrant servers as included in the term "bailiffs" as used in RCW 35.20.230.

It is appropriate at this point to briefly refer to the Traffic Violations Bureau. Defendants' brief states without contradiction by plaintiffs that the bureau was formally established in Seattle by ordinance which was later reenacted by the current Traffic Code of the City of Seattle, effective March 11, 1963. Its assigned duties are to assist the municipal court "with the clerical work of traffic cases." These include the acceptance and receipt for bail, maintenance of records of the city traffic ordinance violations and bail forfeitures, the status of cases, mailing notices, requesting complaints, and filing warrants against persons who fail to respond to citations and summons, and the making of regular reports. Ordinance No. 94893 (Seattle Code 21.06.330), referred to in conclusion of law No. 1, provides that the judges of the Seattle Municipal Court are authorized to provide by rule pursuant to RCW 35.20.140 that the Traffic Violations Bureau shall be the appropriate office for a variety of services connected with traffic violations. The bureau operates under the supervision of the director ap-

pointed by the judges of the municipal court pursuant to RCW 35.20.131.

The plaintiffs here, beginning in 1965, were originally appointed on a temporary basis to the position of traffic warrant servers by the Seattle Civil Service Commission without civil service examination. In November 1970, the Civil Service Commission gave notice of a competitive civil service examination for the position. Two of the plaintiffs failed to pass the test and were given notice of termination effective March 16, 1971. The other two failed to place on the eligible list and were informed that their positions were in jeopardy. The Civil Service Commission granted them a hearing and upon its adverse ruling, plaintiffs sued to enjoin the city and its Civil Service Commission from extending civil service status to the position of warrant server for the Seattle Traffic Violations Bureau.

Defendants' basic contention is that City Charter Article 16, §§ 3 and 11 are broad enough to cover the position of warrant server in the Traffic Violations Bureau of the City of Seattle. Defendants argue that article 16, § 3 applies to "all the offices and places of employment in the public service of the city, except the offices and places mentioned in Section 11 of this article." They then argue that section 11 makes specific mention of a number of exclusions, but none refers to warrant servers.

The contention ignores the effect that must be given to Seattle City Charter Article 3, §§ 1 and 2. Article 3, § 1 refers to 18 divisions of city government. Each division is listed under the heading of "departments." Article 3, § 1 (9), (11) and (18) designate as a department of the city government the library, judicial and transportation departments. However, Article 3, § 2 expressly provides:

> Section 2. The said departments, with the exception of the Judicial, Library and Transportation departments, so long as they are constituted in accordance with the provisions of state law, shall be constituted as hereinafter provided, subject only to such changes as are expressly authorized by this charter.

It will be noted that the judicial department is excluded from the divisions of city government "so long as [it is] constituted in accordance with the provisions of state law . . ." The term "judicial department" obviously includes judicial personnel. Judicial personnel includes bailiffs appointed by the court. Such bailiffs, as pointed out, include warrant servers. Furthermore, *In re Cloherty, supra,* holds the city charter does not supplant the state's authority to constitute municipal courts. Article 3, § 2 was undoubtedly drafted with the *Cloherty* rule in mind. Accordingly, the establishment of municipal courts and the appointment of their judicial personnel are matters for regulation by state law. So considered, article 16 establishing a civil service system for "all the offices and places of employment in the public service of the city . . ." (subject to Article 16, § 11) necessarily means only those departments of government described in article 3, §§ 1 and 2 which are not "constituted in accordance with the provisions of state law." I conclude the city charter did not and could not cover warrant servers.

The conclusion reached makes it unnecessary to consider whether the extension of Seattle's civil service system to a warrant server—one who performs a mere ministerial function—even if so intended, would nevertheless be void because violative of the doctrine of the separation of powers. *See Sabbe v. Wayne County,* 322 Mich. 501, 33 N.W.2d 921 (1948); *Duncan v. Wayne County,* 316 Mich. 513, 25 N.W.2d 605 (1947). *See also* H. Kaplan, *Law of Civil Service* 70-71 (1958); 16 C.J.S. *Constitutional Law* § 116, at 505, n.39 (1956).

I agree the trial court's judgment should be modified to apply only to plaintiffs and, as so modified, I would affirm.

Petition for rehearing denied November 29, 1973.

Review granted by Supreme Court January 24, 1974.